IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDABETH RIVERA, individually and on behalf of all others similarly situated, | Case No.: 1:16-cv-02714 |
| Plaintiff, | Judge: Honorable Edmond E. Chang |
| v. | Magistrate Judge Michael T. Mason |
| GOOGLE INC., | |
| Defendant. | |
| JOSEPH WEISS, individually and on behalf of all others similarly situated, | Case No.: 1:16-cv-02870 |
| Plaintiff, | Judge: Honorable Edmond E. Chang |
| v. | Magistrate Judge Michael T. Mason |
| GOOGLE INC., | |
| Defendant. | |

## MOTION FOR ENTRY OF ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Defendant Google Inc. ("Google") hereby requests that the Court enter the Order Regarding Discovery of Electronically Stored Information, attached hereto as Exhibit 1. The section that is in dispute is Paragraph 5(e), which lists the categories of ESI that need not be searched, collected, reviewed, or preserved, absent a showing of good cause, in light of the Federal Rules on proportionality. Google has agreed to preserve ESI created or received as early as January 1, 2010, but would exclude ESI that is highly burdensome to retain or review and with less potential relevance (such as, for example, ephemeral data, audio and video recordings, automatically saved versions of documents and emails, and deleted data accessible only by

-1-

forensics) absent reason to believe that these data may contain relevant information. Google's proposed language is reasonable, feasible, and follows current form orders on the subject. Indeed, much of the language Google has proposed is borrowed from this Court's Proposed Standing Order Relating to the Discovery of Electronically Stored Information. See Standing Order at Principle 2.04 (Scope of Preservation), subsection (d); see also the 7th Circuit's Principles Relating to the Discovery of Electronically Stored Information, Principle 2.04 (Scope of Preservation), subsection (d), and the 7th Circuit's Proposed Discovery Plan for Electronically Stored Information at Para. 2(c).

Despite the fact that Google first proposed the language in 5(e) on April 27, 2017, Plaintiffs only redlined that language for the first time yesterday at approximately 9:00 p.m CT. In those proposed revisions to Paragraph 5(e), Plaintiffs propose that Google be required to preserve, collect, and review various categories of likely irrelevant information if, for example, the data "concern[s] Plaintiff Weiss or Plaintiff Rivera." Of course, Plaintiffs have given no reason to believe that the categories of data are likely to pertain to the Plaintiffs in this case or otherwise be especially relevant. Nor could Google determine anything about the contents of such data without the massive undertaking of preserving and reviewing all of it. Plaintiffs' proposed changes, that are currently in dispute, are in redline in the version attached hereto as Exhibit 2.

Plaintiffs' proposed revisions to Paragraph 5(e) impose the very burdens (incommensurate with the needs of this case) that Section 26(b)(2)(c) was designed to avoid. Categories of data that are difficult to access, extremely burdensome to review, and which do not obviously relate to the issues in this case are not suddenly rendered accessible simply with the rider "if they pertain to Plaintiffs." We have no reason to believe they do pertain to Plaintiffs,

but every reason to believe preservation, collection and review would be extremely burdensome. One of the primary purposes of an ESI order is to further the proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(2)(c), by reducing the burden associated with discovery of ESI that is unlikely to yield any relevant information. *See, e.g.,* Seventh Circuit's Model Order, Section 1.03. Plaintiffs' revisions undermine this purpose, and should not be adopted. *See, e.g., Thermal Design, Inc. v. Guardian Bldg. Prod., Inc.*, No. 08-C-828, 2011 WL 1527025, at *1 (E.D. Wis. Apr. 20, 2011) (denying motion to compel discovery of ESI because movant failed to explain why "the extensive amount of information it seeks is of such importance that it justifies imposing an extreme burden," and further noting that courts "should not countenance fishing expeditions simply because the party resisting discovery can afford to comply").

Google only learned of Plaintiffs' proposed revisions at approximately 9:30 p.m. CT last night (despite having first shared this language with Plaintiffs in April). If the Court is inclined to adopt any of Plaintiffs' revisions, Google respectfully requests an opportunity to further brief these issues prior to the entry of such an order.

Google has started and will continue producing documents to Plaintiffs, and does not intend to delay production of documents pending entry of an appropriate ESI order.

DATED: July 6, 2017                     GOOGLE INC.,


                                        By:  */s/ Susan D. Fahringer*
                                              Susan D. Fahringer

                                        **PERKINS COIE LLP**
                                        Susan D. Fahringer, *admitted pro hac vice*
                                        SFahringer@perkinscoie.com
                                        1201 Third Avenue, Suite 4900
                                        Seattle, WA 98101-3099
                                        Telephone: 206.359.8000
                                        Facsimile: 206.359.9000

                                        Debra R. Bernard (ARDC No. 6191217)
                                        DBernard@perkinscoie.com
                                        131 South Dearborn Street, Suite 1700
                                        Chicago, Illinois 60603-5559
                                        Telephone: 312.324.8400
                                        Facsimile: 312.324.9400

                                        **HOGAN LOVELLS US LLP**
                                        Neal Kumar Katyal, *admitted pro hac vice*
                                        neal.katyal@hoganlovells.com
                                        555 Thirteenth St., N.W.
                                        Washington, DC 20004
                                        Telephone: 202.637.5528
                                        Facsimile: 202.637.5910

                                        Attorneys for Defendant Google Inc.

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on July 6, 2017, I served the foregoing document, entitled **MOTION FOR ENTRY OF AGREED CONFIDENTIALITY ORDER**, upon the counsel identified below, via ECF, email service and United States mail, first class postage prepaid:


LITE DEPALMA GREENBERG, LLC
Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: 312.750.1265

AHDOOT & WOLFSON, PC
Robert R. Ahdoot
rahdhoot@ahdootwolfson.com
Tina Wolfson
twolfson@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Telephone: 310.474.9111

CAREY RODRIGUEZ MILIAN GONYA, LLP
David P. Milian
dmilian@careyrodriguez.com
Frank S. Hedin
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: 305.372.7474


I certify under penalty of perjury that the foregoing is true and correct.



 _/s/ Danielle Ballard_____
Danielle Ballard

Executed on July 6, 2017.

CERTIFICATE OF SERVICE



**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LINDABETH RIVERA, on behalf of herself and all others similarly situated, | Civil Action No. 1:16-cv-2714 |
|         Plaintiff, | Hon. Edmond E. Chang |
| v. | Magistrate Michael T. Mason |
| GOOGLE INC., | |
|         Defendant. | |
| JOSEPH WEISS, individually and on behalf of all others similarly situated, | Civil Action No. 1:16-cv-02870 |
|         Plaintiff, | Hon. Edmond E. Chang |
|     v. | Magistrate Michael T. Mason |
| GOOGLE INC., | |
|         Defendant. | |

## [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the Seventh Circuit's Principles Relating to the Discovery of Electronically Stored Information, and any other applicable orders and rules.

1

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Seventh Circuit's Principles Relating to the Discovery of Electronically Stored Information.

## 3. PROPORTIONALITY

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Federal Rules of Civil Procedure ("Rules") 26(b)(1) and 26(b)(2)(C). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

## 4. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 5. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received between January 1, 2010 and March 1, 2016, will be preserved. Without waiver of the attorney-client privilege and/or work product protection, the parties affirm that they have implemented preservation processes consistent with their obligations under the Federal Rules of Civil Procedure, including as specifically identified below;

b) The parties have agreed that within ten days of the filing of this Stipulation, they will discuss the types of ESI they believe should be preserved and exchange a list of the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

c) The parties will agree within 10 days of the filing of this Stipulation on the number of custodians per party for whom ESI will be preserved;

d) Defendant has informed Plaintiffs that it believes these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and therefore ESI from these sources will be preserved only pursuant to normal business retention, and not searched, collected, reviewed, or produced for purposes of this litigation:

    i. backup systems and/or tapes used for disaster recovery;

    ii. systems, server and network logs; and

    iii. systems no longer in use that cannot be accessed.

e) In furtherance of the Federal Rules on proportionality, the categories of ESI identified below need not be searched, collected, reviewed, or preserved, absent a showing of good cause:

    i. voicemail messages;

    ii. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    iii. instant messaging;

    iv. automatically saved versions of documents and emails;

    v. video and audio recordings;

    vi. deleted, slack, fragmented, or other data accessible only by forensics;

    vii. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    viii. online access data such as temporary internet files, history, cache, cookies, and the like;

    ix. dynamic fields of databases or log files that are not retained in the usual course of business;

    x. data in metadata fields that are frequently updated automatically, such as last opened dates;

    xi. backup data that is substantially duplicative of data that is more accessible elsewhere; and

    xii. other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

## 5. SEARCH

(a)    The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to

3

identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(b)     Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, AVI, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

(c)     Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

6.  **PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange

4

for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

**7. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI to the extent the immediate production of all responsive ESI is not feasible. Following any initial production of a phased ESI production pursuant to this Section, the parties will meet and confer regarding prioritizing the order of subsequent productions. Nothing contained herein should be construed as an agreement by the parties that discovery should be segmented or bifurcated.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) Communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

c) Nothing in this Agreement shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____        _____

                                                    Counsel for Plaintiffs

Dated: _____

                         Counsel for Defendant GOOGLE INC.

      **IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____

                    UNITED STATES DISTRICT/MAGISTRATE JUDGE

# APPENDIX 1
## PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |

| CC | All recipients that were included on the "CC" line of the email |
|---|---|
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential

8

within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **NATIVE FILE PRODUCTIONS.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LINDABETH RIVERA, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>                Defendant. | Civil Action No. 1:16-cv-2714<br><br>Hon. Edmond E. Chang<br><br>Magistrate Michael T. Mason |
| JOSEPH WEISS, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>GOOGLE INC.,<br><br>                Defendant. | Civil Action No. 1:16-cv-02870<br><br>Hon. Edmond E. Chang<br><br>Magistrate Michael T. Mason |

## [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the Seventh Circuit's Principles Relating to the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Seventh Circuit's Principles Relating to the Discovery of Electronically Stored Information.

## 3. PROPORTIONALITY

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Federal Rules of Civil Procedure ("Rules") 26(b)(1) and 26(b)(2)(C). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

## 4. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 5. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received between January 1, 2010 and March 1, 2016, as well any ESI responsive to a party's request(s) for production that is known to exist by the other party regardless of the date such ESI was created or received, will be preserved. Without waiver of the attorney-client privilege and/or work product protection, the parties affirm that they have implemented preservation processes consistent with their obligations under the Federal Rules of Civil Procedure, including as specifically identified below;

b) The parties have agreed that within ten days of the filing of this Stipulation, they will discuss the types of ESI they believe should be preserved and exchange a list of the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing

2

"manager." The parties shall add or remove custodians as reasonably necessary;

c) The parties will agree within 10 days of the filing of this Stipulation on the number of custodians per party for whom ESI will be preserved;

d) Defendant has informed Plaintiffs that it believes these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and therefore ESI from these sources will be preserved only pursuant to normal business retention, and not searched, collected, reviewed, or produced for purposes of this litigation:

    i.    backup systems and/or tapes used for disaster recovery;

    ii.    systems, server and network logs; and

    iii.    systems no longer in use that cannot be accessed.

e) In furtherance of the Federal Rules on proportionality, the categories of ESI identified below need not be searched, collected, reviewed, or preserved, absent a showing of good cause:

    i.    voicemail messages;

    ii.    information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    iii.    instant messaging, except with respect to instant messages transmitted in the ordinary course of business concerning the subject matter of this litigation, e.g., messages exchanged between computer developers or programmers concerning the development or functionality of any facial recognition technology potentially implicated by this litigation;

    iv.    automatically saved versions of documents and emails, to the extent duplicative of another document or email;

    v.    deleted, slack, fragmented, or other data accessible only by forensics, except with respect to any data stored or accessed in connection with any facial recognition technology potentially implicated by this litigation or any such data concerning Plaintiff Weiss or Plaintiff Rivera;

    vi.    random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system, except with respect to any memory, files or data stored or accessed in connection with any facial recognition technology potentially implicated by this litigation or any such memory, files or data concerning Plaintiff Weiss or Plaintiff Rivera;

    vii.    online access data such as temporary internet files, history, cache, cookies, and the like;

    viii.    dynamic fields of databases or log files that are not retained in the usual course of business, except as to any dynamic fields pertaining to an individual's consent to being subjected to any facial recognition

**Formatted:** Indent: First line: 0", Numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Right + Aligned at: 1" + Indent at: 1.25"

**Deleted:** <#>video and audio recordings;¶

**Formatted:** Indent: Left: 1.25", Numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Right + Aligned at: 1" + Indent at: 1.25"

**Deleted:** s

technology potentially implicated by this litigation;

    ix.    data in metadata fields that are frequently updated automatically, such as last opened dates;

    x.    backup data that is substantially duplicative of data that is more accessible elsewhere; and

    xi.    other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

## 5. SEARCH

(a)    The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(b)    Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, AVI, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

(c)    Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be

produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

## 6. PRODUCTION FORMATS

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## 7. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI to the extent the immediate production of all responsive ESI is not feasible. Following any initial production of a phased ESI production pursuant to this Section, the parties will meet and confer regarding prioritizing the order of subsequent productions. Nothing contained herein should be construed as an agreement by the parties that discovery should be segmented or bifurcated.

## 8. DOCUMENTS PROTECTED FROM DISCOVERY

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b) Communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

c) Nothing in this Agreement shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

5

**9. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____     _____
                                            Counsel for Plaintiffs

Dated: _____     _____
                                            Counsel for Defendant GOOGLE INC.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____     _____
                                            UNITED STATES DISTRICT/MAGISTRATE JUDGE

**APPENDIX 1**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |

| CC | All recipients that were included on the "CC" line of the email |
|---|---|
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential

within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **NATIVE FILE PRODUCTIONS.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

# EXHIBIT 2