IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDABETH RIVERA, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>GOOGLE LLC,<br><br>       Defendant. | Case No.: 1:16-cv-02714<br><br>Judge: Honorable Edmond E. Chang<br><br>Magistrate Judge Michael T. Mason |
| JOSEPH WEISS, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>GOOGLE LLC,<br><br>       Defendant. | Case No.: 1:16-cv-02870<br><br>Judge: Honorable Edmond E. Chang<br><br>Magistrate Judge Michael T. Mason<br><br><br>**PUBLICLY FILED<br>REDACTED VERSION** |

## GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT ON STANDING AND RELATED DEFENSES

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 3

    A.  Google Photos ......................................................................................... 3

    B.  The Plaintiffs .......................................................................................... 5

    C.  Plaintiffs' Allegations of Injury ............................................................. 6

    D.  Procedural History .................................................................................. 7

III. ARGUMENT ..................................................................................................... 7

    A.  The Court Should Dismiss Plaintiffs' Claims for Lack of Standing ...... 7

        1.  Article III Requires a "Concrete Injury," Not a Bare Statutory Violation ........................................................................ 8

        2.  Plaintiffs Have Not Suffered a Concrete Injury ......................... 9

        3.  Plaintiffs' Purported Injuries Do Not Resemble Common-Law Privacy Torts .................................................................... 15

        4.  Plaintiffs Cannot Show Injury *Caused* by Google's Alleged Conduct ....................................................................... 18

    B.  Plaintiffs Are Not "Aggrieved" Within the Meaning of BIPA ............ 20

        1.  Only a Person Who Suffers Actual Harm Is "Aggrieved." ...... 21

        2.  Plaintiffs Have Suffered No Actual Harm ............................... 26

    C.  Plaintiffs Are Not Entitled to Any Remedy Under BIPA .................... 27

        1.  Plaintiffs Are Not Entitled to Actual Damages ....................... 27

        2.  Plaintiffs Are Not Entitled to Liquidated Damages ................. 27

        3.  Plaintiffs Are Not Entitled to Injunctive Relief ...................... 29

IV. CONCLUSION ............................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Menards, Inc.*,
 285 F.3d 630 (7th Cir. 2002) ................................................................21

*American Surety Co. v. Jones*,
 51 N.E.2d 122 (Ill. 1943) ....................................................................26

*Angelo v. Moriarty*,
 No. 15 C 8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016)....................................16

*Braitberg v. Charter Commc'ns, Inc.*,
 836 F.3d 925 (8th Cir. 2016) ...................................................................9

*Brucker v. Mercola*,
 886 N.E.2d 306 (Ill. 2007)....................................................................23

*Bultemeyer v. CenturyLink, Inc.*,
 No. CV-14-02530-PHX-SPL, 2017 WL 634516 (D. Ariz. Feb. 15, 2017) ............................11

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)............................................................................7

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)...........................................................................11

*Commonwealth Ins. Co. v. Stone Container Corp.*,
 323 F.3d 507 (7th Cir. 2003) ............................................................21, 24

*Conrad v. Boiron, Inc.*,
 No. 13-C-7903, 2015 WL 7008136 (N.D. Ill. Nov. 12, 2015) ..................................13

*Diedrich v. Ocwen Loan Servicing, LLC*,
 No. 13-CV-693, 2015 WL 1885630 (E.D. Wis. Apr. 24, 2015), *aff'd*, 839 F.3d
 583 (7th Cir. 2016).............................................................................25

*Doe v. Chao*,
 540 U.S. 614 (2004)........................................................................28, 29

*Finkelman v. Nat'l Football League*,
 810 F.3d 187 (3d Cir. 2016)..................................................................14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ......................................................................9, 13, 15

*Gubala v. Time Warner Cable, Inc.*,
    846 F.3d 909 (7th Cir. 2017) .............................................................................. passim

*Hancock v. Urban Outfitters, Inc.*,
    830 F.3d 511 (D.C. Cir. 2016) ...............................................................................9, 11

*Helping Others Maintain Envtl. Standards v. Bos*,
    941 N.E.2d 347 (Ill. App. Ct. 2010) ..........................................................................29

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)...................................................................................................20

*In re Facebook Biometric Information Priv. Litig.*,
    No. 3:15-cv-03747-JD, 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018)...................25

*Jacobson v. CBS Broad., Inc.*,
    19 N.E.3d 1165 (Ill. App. Ct. 2014) ...................................................................16, 17

*Lawlor v. N. Am. Corp. of Illinois*,
    983 N.E.2d 414 (Ill. 2012).........................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)..........................................................................................20, 22

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).............................................................................................. passim

*Maglio v. Advocate Health & Hosps. Corp.*,
    40 N.E.3d 746 (Ill. App. Ct. 2015) ...........................................................................12

*McCollough v. Smarte Carte, Inc.*,
    No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016)............................15, 24

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ........................................................................1, 8, 12, 13

*Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.*,
    144 F.3d 1077 (7th Cir. 1998) ...................................................................................29

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*,
   802 F.3d 926 (7th Cir. 2015) ................................................20

*Pace Commc'ns, Inc. v. Moonlight Design, Inc.*,
   31 F.3d 587 (7th Cir. 1994) ................................................27, 28

*Padilla v. Dish Network L.L.C.*,
   No. 12-cv-7350, 2013 WL 3791140 (N.D. Ill. July 19, 2013) ................................................25

*Padilla v. DISH Network L.L.C.*,
   No. 12-cv-7350, 2014 WL 539746 (N.D. Ill. Feb. 11, 2014) ................................................28

*Parvati Corp. v. City of Oak Forest*,
   630 F.3d 512 (7th Cir. 2010) ................................................19

*Patel v. Facebook Inc.*,
   No. 3:15-cv-03747-JD, 2018 WL 1050154 (N.D. Cal. Feb. 26, 2018) ................................................13

*Patel v. Zillow, Inc.*,
   No. 17-CV-4008, 2017 WL 3620812 (N.D. Ill. Aug. 23, 2017) ................................................17

*Penske Trust Leasing Co., L.P. v. Chemetco, Inc.*,
   725 N.E.2d 13 (Ill. App. Ct. 2000) ................................................27

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................13

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ................................................11, 14

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ................................................16

*Rosenbach v. Six Flags Entm't Corp.*,
   2017 IL App (2d) 170317 (Dec. 21, 2017) ................................................ passim

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017) ................................................14

*Rottner v. Palm Beach Tan, Inc.*,
   No. 15 CH 16695, Order (Cook County Ill. Mar. 2, 2018) (Gamrath, J.) ................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schiller v. Mitchell*,
828 N.E.2d 323 (Ill. App. Ct. 2005) ........................................................17

*Schmidt v. Ameritech Illinois*,
768 N.E.2d 303 (Ill. App. Ct. 2002) ...................................................16, 17

*Sekura v. Krishna Schaumburg Tan, Inc.*,
No. 16 CH 04945, Order (Cook County Ill. Jan. 16, 2018) (Atkins, J.) ................................24

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................... passim

*Sterk v. Redbox Automated Retail*,
672 F.3d 535 (7th Cir. 2012) ....................................................24, 25, 27, 28

*United States v. Dionisio*,
410 U.S. 1 (1973) ..........................................................................17

*Van Alstyne v. Elec. Sciptorium, Ltd.*,
560 F.3d 199 (4th Cir. 2009) ...............................................................28

*Vigil v. Take-Two Interactive Software, Inc.*,
235 F. Supp. 3d 499 (S.D.N.Y. 2017), *aff'd in part and judgment modified sub nom. Santana v. Take-Two Interactive Software, Inc.*, No. 17-303, 2017 WL 5592589 (2d Cir. Nov. 21, 2017) ............................................... passim

*Williams v. Merle Pharmacy, Inc.*,
No. 15-cv-1262, 2015 WL 6143897 (C.D. Ill. Oct. 19, 2015) ..........................................25

*Yeske v. Macoupin Energy, LLC*,
No. 17-L-0000124, Order (Macoupin County Ill. Apr. 2, 2018) (Deihl, J.)............................24

**STATUTES**

70 ILCS 405/3.20................................................................................23

220 ILCS 5/22-501 ..............................................................................23

740 ILCS 14/5(e) ...........................................................................10, 14

740 ILCS 14/15(a) ..............................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

740 ILCS 14/15(b)(1)-(3) ................................................................19

740 ILCS 14/20 .......................................................................14, 20, 23, 27

740 ILCS 14/20(1)-(2) ................................................................28

765 ILCS 1075/5 ........................................................................15

765 ILCS 1075/30 .......................................................................15

775 ILCS 5/1-103(B) ..................................................................23

5 U.S.C. § 552a(g)(4)(A) ............................................................28

Cable Communications Policy Act ...........................................9, 25

Fair Credit Reporting Act ...........................................................11

Illinois Biometric Information Privacy Act .......................... passim

Illinois Cable and Video Customer Protection Law ...................23

Illinois Human Rights Act ..........................................................23

Privacy Act of 1974 ...................................................................28

Satellite Home Viewer Extension and Reauthorization Act........28

Soil and Water Conservation Districts Act.................................23

Stored Communications Act ......................................................28

Video Privacy Protection Act ..............................................25, 28

**RULES**

Fed. R. Civ. P. 30(b)(6)................................................................7

Fed. R. Civ. P. 56(a) ....................................................................7

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014)......................................22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Restatement (Second) of Torts § 652A(2) ......................................................................15

Restatement (Second) of Torts § 652A cmt. b (1977) ....................................................15

Restatement (Second) of Torts § 652B cmt. c ..........................................................16, 17

Restatement (Second) of Torts § 652D cmt. a ...............................................................16

Restatement (Second) of Torts § 652E cmt. a ...............................................................16

## I. INTRODUCTION

Plaintiffs Lindabeth Rivera and Joseph Weiss claim that Google Photos—a free service that helps users store and organize their photographs—violates the Illinois Biometric Information Privacy Act ("BIPA"). But after two years of litigation and fulsome discovery, there is no evidence that plaintiffs have suffered a concrete and cognizable injury as a result of Google's alleged noncompliance with BIPA. There is no evidence of data breach; no evidence of disclosure to third parties; and no evidence of misuse of any data. Plaintiffs' inability to point to any harm they suffered is fatal to their claims for three reasons.

First, to establish Article III standing, plaintiffs must "set forth . . . specific facts" showing that they have suffered a "concrete" injury that is fairly traceable to Google's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). Plaintiffs have not made that showing. Nor can they. They readily admit that they have not experienced any financial, physical, or emotional injury. Instead, they claim that Google's alleged noncompliance with BIPA necessarily violated their privacy rights. But a "violation of a statute that causes no harm does not trigger a federal case." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016). And the Seventh Circuit has held that a company in "possession" of "personal information" does not violate any "right to privacy" without "releas[ing]" or "disseminat[ing]" that information. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017). In any event, even if plaintiffs could establish a concrete injury, they could not show that it was caused by Google's alleged conduct because they both continued to upload photographs of themselves, or allowed such photographs to be uploaded, *after* they learned of Google's alleged invasion of their privacy.

Second, BIPA only affords a cause of action to a plaintiff who is "aggrieved" by a violation of the statute. The Illinois Appellate Court has made clear that to be "aggrieved" under BIPA a plaintiff must suffer some "actual injury, adverse effect, or harm." *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶ 20 (Dec. 21, 2017). That independent statutory requirement is distinct from Article III's concrete injury requirement, although it likewise requires more than "technical violations . . . of the statute." *Id.* ¶ 21. Plaintiffs cannot point to any evidence that they suffered "actual injury, adverse effect, or harm." *Id.* ¶ 20. Thus, even if plaintiffs could show that the bare statutory violations they allegedly experienced are sufficient to confer Article III standing, their claims would still fail.

Third, even if plaintiffs have Article III standing (they do not) and even if they are "aggrieved" within the meaning of BIPA (they are not), they must still meet the fundamental prerequisites for any form of relief they seek. That they cannot do. Plaintiffs do not seek actual damages, so they are not entitled to any. Plaintiffs may not obtain liquidated damages because liquidated damages are intended to approximate actual damages, and plaintiffs have suffered no actual damages. Lastly, plaintiffs are not entitled to injunctive relief because they cannot show that they would suffer irreparable harm in the absence of that extraordinary remedy.

Against all of this—zero evidence of cognizable harm—what the undisputed evidence *does* show is that the notice and consent that plaintiffs allege they were missing would not have changed anything. Weiss, who is a Google Photos user, ███████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████ Rivera is not a Google Photos user, but her conduct was similar. ██████████████████████████████████████████ ███████████████████████████████████████████

-2-

███████████████████████████████████████

███████████████████████████████████████

████████████████████ Even after learning all about BIPA, and even after understanding how the Google Photos face grouping feature works in enough detail to *file a federal complaint*, both plaintiffs arranged to be further subjected to the very technology from which they now seek judicial relief. This Court should therefore grant summary judgment in Google's favor.

## II.    BACKGROUND

### A.    Google Photos

Google Photos offers a free service for organizing and sharing photographs. *See* Google LLC's Rule 56.1(a) Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Google SOF") ¶ 7. One of the ways Google Photos helps users organize their photographs is by grouping the photographs in a user's private account based on whether they contain visually similar faces. *See* Google SOF ¶ 8. These groups of photos are referred to as "face groups." *See* Google SOF ¶ 9. The Google Photos face-grouping feature is optional and can be disabled by the user at any time. *See* Google SOF ¶ 10.

To perform face grouping, Google Photos (a) detects images of faces in photographs in the user's private account, (b) estimates how similar those images are to images of faces in other photographs in that user's private account, and (c) groups photographs within the user's private account based on whether they include visually similar faces. *See* Google SOF ¶ 11-13.[1]

---

[1] The technology that Google Photos uses to group photographs in a user's private account has developed over time and continues to evolve. Similarly, the terminology used to describe the technology has varied and changed over time. The description provided here explains how the technology has worked with respect to the face group of plaintiff Weiss in his Google Photos account and the face group of plaintiff Rivera in Gutierrez's Google Photos account. *See* Google SOF ¶ 11-13.

-3-



See Google SOF ¶ 14.[2]

See Google SOF ¶ 15.

See Google SOF ¶ 17.

Google Photos gives *users* the option of assigning a "label" to the face groups in their private accounts. The label may be any string of characters, such as "Mom," "Tom," "Bestie," or even "1234." *See* Google SOF ¶ 18. If a user chooses to label a face group, then Google will associate the face group with the assigned label in that user's private account so that the user can use the label to search for photographs in his or her account that are associated with that group. *See* Google SOF ¶ 19. If a user chooses to label a face group, that label remains private to the user's account, and is only visible to the user who created it. *See* Google SOF ¶ 20.

A user may also choose not to label the face groups in his or her account. *See* Google SOF ¶ 21. *See* Google SOF ¶ 22.

See Google SOF ¶ 23.

---

[2] Google maintains that face templates (and any other data collected by Google) do not qualify as "biometric identifiers" or "biometric information" under BIPA. The parties have agreed to defer resolution of that issue until after this motion is resolved. Solely for purposes of this motion, however, Google will assume that face templates may qualify as biometric information or biometric identifiers, at least under some circumstances.

**B.      The Plaintiffs**

Plaintiff Weiss is a Google Photos user. *See* Google SOF ¶ 24. ███████████████

████████████████████████████████████████████████████████

███████████████ *See* Google SOF ¶ 25. Weiss has identified 53 photographs of himself in

his Google Photos account that he contends are the basis for his claims in this case. *See* Google

SOF ¶ 26.███████████████████████████████████ *See*

Google SOF ¶ 26.███████████████████████████

███████████████████████████████████ *See*

Google SOF ¶ 27.███████████████████████████

███████ *See* Google SOF ¶ 28.

Plaintiff Rivera is not a Google Photos user but her friend, Blanca Gutierrez, is. *See*

Google SOF ¶¶ 31-33.███████████████████ *See* Google

SOF ¶ 34. Gutierrez and Rivera, together, have identified 27 photographs of Rivera that were

taken by Gutierrez and uploaded to Gutierrez's Google Photos account. *See* Google SOF ¶ 35.

Rivera contends that those photographs are the basis for her claims in this case. *See* Google SOF

¶ 36.███████████████████████████████████

███████ *See* Google SOF ¶ 38.███████████████████

███████████████████████ *See* Google SOF ¶ 42-44.███

████████████████████████████████████████

███████████████████ *See* Google SOF ¶ 44.

████████████████████████████████████

████████████████████████████████████

███████████████ *See* Google SOF ¶ 49.

-5-

 *See* Google SOF ¶ 55.
Face templates are not visible to Weiss or Gutierrez through Google Photos, but are used by Google Photos to create face groups. *See* Google SOF ¶ 16.

*See* Google SOF ¶ 47. There is no evidence of any unauthorized access to the Google Photos accounts and related data of Weiss and Gutierrez. *See* Google SOF ¶¶ 50-51. Nor is there any evidence that their data has been shared outside of Google. *See* Google SOF ¶ 52.

*See* Google SOF ¶ 53.

*See* Google SOF ¶ 54.

C.     **Plaintiffs' Allegations of Injury**

Plaintiffs concede that they did not suffer financial, physical, emotional, or psychological injury as the result of Google Photos. *See* Google SOF ¶ 56. They also acknowledge that they have no evidence that any of their alleged biometric information was disclosed to or otherwise obtained by an unauthorized third party. *See* Google SOF ¶ 50-51.

Rather, plaintiffs *speculate* that their templates may someday be used to steal their identities or otherwise compromise their security. *See* Google SOF ¶ 51. But there is no evidence of any such thing occurring and no evidence that it will occur. *See* Google SOF ¶ 50-51. Simply

put, the evidence in this case shows that the data generated by Google Photos was used to help organize the photographs in Weiss's and Gutierrez's private accounts; plaintiffs have conceded that they are not aware of any other use, let alone misuse. *See* Google SOF ¶ 59.

## D. Procedural History

This Court bifurcated discovery so that the parties could focus first on the merits of plaintiffs' individual claims and Google's defenses. *See* Dkt. 94 (Minute Entry). The first phase of discovery spanned about 11 months, during which Google responded to a dozen interrogatories and more than 80 requests for production; produced hundreds of thousands of pages of documents; and provided approximately 11 hours of Rule 30(b)(6) deposition testimony. *See* Google SOF ¶¶ 61-64. On March 28, 2018, the parties filed a joint status report proposing a staged approach to summary judgment motions. The parties agreed that Google would file an initial motion on Article III standing and related defenses, and that the additional summary judgment motions contemplated by the parties would be deferred until resolution of Google's initial motion. *See* Dkt. 137 (Joint Status Report). The parties further agreed that they would not rely on expert testimony in connection with Google's initial motion.

## III. ARGUMENT

Google is entitled to summary judgment dismissing plaintiffs' claims because plaintiffs cannot establish Article III standing; because plaintiffs are not "aggrieved" within the meaning of BIPA; and because plaintiffs are not entitled to monetary or injunctive relief under BIPA.[3]

---

[3] As this Court knows, summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the movant, Google may carry its initial burden by identifying evidence that negates an essential element of plaintiffs' claims or by showing that plaintiffs lack evidence to establish an essential element of their claims. The burden then shifts to plaintiffs to produce evidence supporting their claims. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A.      **The Court Should Dismiss Plaintiffs' Claims for Lack of Standing.**

1.      **Article III Requires a "Concrete Injury," Not a Bare Statutory Violation.**

"[T]he 'irreducible constitutional minimum' of standing consists of three elements."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560). "The

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Id*. The plaintiff "bears the burden of establishing these elements." *Id*. At the summary judgment

stage, plaintiffs may not "rest on . . . mere allegations, but must set forth by affidavit or other

evidence specific facts" supporting each element of standing. *Lujan*, 504 U.S. at 561 (internal

quotation marks and citations omitted). And in a putative class action, the named plaintiffs must

satisfy the Article III requirements themselves. *See Spokeo*, 136 S. Ct. at 1547 n.6 (citing *Simon

v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976)).

To suffice for Article III, an injury in fact must be "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation

marks and citations omitted). To be "concrete," an injury "must be '*de facto*'; that is, it must

actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)).

The violation of a statute is not, in and of itself, a concrete injury; rather, "Article III standing

requires a concrete injury even in the context of a statutory violation." *Id*. at 1549. It does not

matter whether the statutory right in question "is characterized as 'substantive' or 'procedural.'"

*Meyers*, 843 F.3d at 727 n.2. The "lesson[] of *Spokeo*" is that "[a] violation of a statute that

causes no harm does not trigger a federal case." *Id*.

The Seventh Circuit has elucidated how these principles play out in a context similar to

this case. In *Gubala*, the plaintiff alleged that the defendant, Time Warner Cable, had retained

certain personal information—including his Social Security number, credit card number, address, and telephone number—in violation of the Cable Communications Policy Act. *See* 846 F.3d at 910. The Seventh Circuit affirmed the dismissal of the case for lack of standing. It held that "the retention of the information, on its own" was not a "concrete" harm sufficient to establish injury in fact. *Id*. at 910-11. While there could conceivably have been a "*risk* of harm," in that the information could have been "given away or leaked or lost," there were no facts indicating any such thing had occurred or might occur in the future. *Id*. at 910. The plaintiff also asserted that his "right of privacy" had been "violat[ed]," but the court found that argument insufficient for standing because there was "no indication that Time Warner ha[d] released, or allowed anyone to disseminate, any of the plaintiff's personal information in the company's possession." *Id*. at 912. Without concrete harm, it was not enough for the plaintiff to be "outraged by the thought that Time Warner . . . [is] violating a . . . statute with apparent impunity." *Id*. at 911-12. *Gubala*'s reasoning and result is consistent with many other cases in this Circuit and elsewhere. *See, e.g.*, *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017) (obtaining a credit report without providing the required disclosure did not inflict a sufficiently concrete harm; court rejected plaintiff's claim that he suffered "informational and privacy injuries"); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (retaining personal  information longer than permitted under a statute did not give rise to Article III injury); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (defendant's "record[ing]" of the plaintiff's zip code in violation of two District of Columbia laws, "without any concrete consequence," did not inflict a legally cognizable harm).

### 2. Plaintiffs Have Not Suffered a Concrete Injury.

Under these principles, plaintiffs have clearly failed to "set forth . . . specific facts" establishing a concrete injury. *Lujan*, 504 U.S. at 561. Plaintiffs all but conceded in their depositions that they are basing standing on the mere violation of BIPA, rather than any "actually exist[ing]" harm. *Spokeo*, 136 S. Ct. at 1548. Plaintiff Weiss testified that he has not "lost money" or suffered "any . . . sort of emotional trauma" or "[p]hysical injury" due to Google's conduct. *See* Google SOF ¶ 56. Plaintiff Rivera similarly disclaimed any financial, physical, emotional, or psychological harm resulting from Google's conduct. *See* Google SOF ¶ 56. Thus, the evidence is consistent with the allegations that plaintiffs made at the outset of this case: their claimed harms boil down to the alleged BIPA violations and nothing more. *See, e.g.*, Second Amended Consolidated Complaint ("SACC") ¶¶ 27-45.

Plaintiffs therefore lack standing under a straightforward application of *Spokeo* and *Gubala*. Without any palpable harm, the core of plaintiffs' case for standing is that the mere existence of ███████████████████████████████████████████ ███████████████████████████—inflicts a concrete injury. That is flatly inconsistent with *Gubala*. 846 F.3d at 910-12. Nor is there anything inherently harmful about collecting or storing biometric data. In fact, BIPA expressly states that it was driven by a concern that consumers would be "*deterred* from partaking in biometric identifier-facilitated transactions." 740 ILCS 14/5(e) (emphasis added). BIPA thus "represents the Illinois legislature's judgment that the collection and storage of biometrics to facilitate financial transactions is not in-of-itself undesirable or impermissible." *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 504 (S.D.N.Y. 2017), *aff'd in part and judgment modified sub nom. Santana v. Take-Two Interactive Software, Inc.*, No. 17-303, 2017 WL 5592589 (2d Cir. Nov. 21, 2017).

-10-

It makes no difference that *Gubala* referred to "retention" of data, while Google here is alleged to have impermissibly obtained and retained the face templates. The holding of *Gubala* is that the mere existence of data does not inflict concrete injury without some other showing, like disclosure to a third party. And the creation of a face template from a photograph does not inflict a concrete harm any more than the subsequent retention of that face template. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) ("We . . . refrain from supporting standing on such an abstract injury" as "the loss . . . of private information."); *Hancock*, 830 F.3d at 514-15 ("request[ing] and record[ing]" a zip code does not inflict concrete injury in fact); *Bultemeyer v. CenturyLink, Inc.*, No. CV-14-02530-PHX-SPL, 2017 WL 634516, at *2-*4 (D. Ariz. Feb. 15, 2017) (court assumed that defendant obtained credit report in violation of the Fair Credit Reporting Act but dismissed plaintiff's claim for lack of standing because "post-*Spokeo* cases from around the country have uniformly found that, absent disclosure to a third party or an identifiable harm from the statutory violation, there is no privacy violation").

Indeed, the harm here is, if anything, *less* concrete than in *Gubala*, because there is no link between plaintiffs' face templates and other identifying information such as name, Social Security number, or credit card information, all of which was at issue in *Gubala*. *See* Google SOF ¶ 53-54. Further, there is zero indication that Google failed to secure plaintiffs' face templates or any other data that, according to plaintiffs, might qualify as a "biometric identifier" or "biometric information" under BIPA. *See* Google SOF ¶¶ 50-52. And plaintiffs themselves testified that they have no "reason to believe" that their photographs or any putative biometric data have been affected by a "security problem or any data breach." *See* Google SOF ¶ 50. For good reason: There is no evidence to that effect.

-11-

Nor can there be standing based on unsubstantiated fears of a future breach. Unfounded fears of future harm, without more, are too speculative to support standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.") (citation omitted); *Maglio v. Advocate Health & Hosps. Corp.*, 40 N.E.3d 746, 753 (Ill. App. Ct. 2015) ("[Plaintiffs'] claims that they face an increased risk of, for example, identity theft are purely speculative and conclusory, as no such identity theft has occurred to any of the plaintiffs."). As the Seventh Circuit explained in *Gubala*, where a plaintiff has failed to establish "any plausible (even if attenuated) risk of harm to himself from [the defendant's] violation," she lacks standing. 846 F.3d at 911. That is doubly true at the summary judgment phase.

In the end, both plaintiffs fall back on the assertion that they have been injured because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google SOF ¶¶ 57-58. That argument fails for at least two reasons.

First, saying that Google has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ is no different than saying that Google has violated BIPA. Plaintiffs' claimed harm boils down, then, to a bare statutory violation without anything more. But again, a "bare" statutory violation, "divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549; *see also Meyers*, 843 F.3d at 727 n.2 ("A violation of a statute that causes no harm does not trigger a federal case."). Indeed, in *Spokeo* itself, the lower court had held that the defendant "violated [the plaintiffs'] statutory rights"; if that were enough for standing, the Supreme Court could have ended its analysis there. 136 S. Ct. at 1548.

-12-

Second, plaintiffs' argument is foreclosed by *Gubala*. There, as here, the plaintiff argued that "a violation of [the statute] is a violation of a right of privacy." *Gubala*, 846 F.3d at 912. The Seventh Circuit disagreed, holding that "there [was] no indication of any violation of the plaintiff's privacy because there [was] no indication that [the defendant] ha[d] released, or allowed anyone to disseminate, any of the plaintiff's personal information in the company's possession." *Id*. Just so here: Google never "disseminated" any of the alleged private information, and plaintiffs have no evidence that there is a "risk of such leakage," or any other form of concrete harm. *Id.* (emphasis omitted).

Plaintiffs may argue that their "mere violation" theory is supported by *Patel v. Facebook Inc.*, No. 3:15-cv-03747-JD, 2018 WL 1050154 (N.D. Cal. Feb. 26, 2018). There, the district court held that "the abrogation of the procedural rights mandated by BIPA necessarily amounts to a concrete injury." *See id*. at *4. But that holding is directly at odds with *Spokeo*, which said that "a bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549; *see also Conrad v. Boiron, Inc.*, No. 13-C-7903, 2015 WL 7008136, at *2 (N.D. Ill. Nov. 12, 2015) ("A state statute . . . cannot confer Constitutional standing when the Plaintiff has not suffered the requisite harm."). *Patel*'s holding is also irreconcilable with binding Seventh Circuit law. *See Gubala*, 846 F.3d at 912; *Groshek*, 865 F.3d at 888-89. Equally important, the *Patel* decision came in the context of a motion to dismiss, not a motion for summary judgment. The plaintiffs in this case must *show*, not merely *allege*, that they suffered a concrete injury arising from alleged violations of BIPA.

To be sure, a legislature "is well positioned to identify intangible harms that meet minimum Article III requirements," and "its judgment is . . . instructive and important" in the standing analysis. *Spokeo*, 136 S. Ct. at 1549. Thus, a legislature "may 'elevat[e] to the status of

-13-

legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan,* 504 U.S. at 578). But any such injury must be "concrete" and "*de facto*" in the first place. *Id*. A legislature "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see Meyers*, 843 F.3d at 727 (a legislature's "judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury").

Plaintiffs would have BIPA perform exactly that function. The Seventh Circuit has held that "the retention" of personal "information, on its own," is not a concrete injury in fact. *Gubala*, 846 F.3d at 910. Plaintiffs argue that BIPA overrides that principle; they say that BIPA has converted the mere retention of information, on its own, into a concrete harm sufficient to support standing here. But as explained above, a legislature cannot concretize an abstract injury. That is especially true of a *state* legislature, since state legislatures generally do not have the power to define the jurisdiction of federal courts. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 196 n.65 (3d Cir. 2016) (the "issue of whether a state legislature can elevate harms to the status of Article III injuries . . . raises serious federalism concerns"); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435 (S.D.N.Y. 2015) ("state law . . . cannot confer injury in the Art. III sense where none would otherwise exist") (internal quotation marks omitted), *aff'd*, 680 F. App'x 41 (2d Cir. 2017).

Moreover, the Illinois legislature did not even try to make the collection of biometric data, without more, a concrete and cognizable injury. Far from deeming the use of biometric data inherently harmful, the legislature sought to facilitate its use in Illinois. *See* 740 ILCS 14/5(e); *Take-Two*, 235 F. Supp. 3d at 504. Further, the legislature explicitly limited BIPA's cause of

-14-

action to those who are "aggrieved"—that is, those who are actually harmed by a violation. *See* 740 ILCS 14/20; *see also infra* at 22. The legislature thus did not attempt to elevate a statutory violation, standing alone, into a cognizable harm. *See Remijas*, 794 F.3d at 695.

In short, plaintiffs cannot show that they suffered a concrete injury sufficient to confer standing. *See Take-Two*, 235 F. Supp. 3d at 511 (plaintiffs lacked standing under BIPA because "their face scans [were not] obtained by a third-party, subjected to identity theft, or misused in any way"); *McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108, at *3 (N.D. Ill. Aug. 1, 2016) (plaintiffs lacked standing under BIPA because "there [was] no allegation that the information was disclosed or at risk of disclosure"); *see also Gubala*, 846 F.3d at 910-11. The bare statutory violations they allege are not enough.

### 3. Plaintiffs' Purported Injuries Do Not Resemble Common-Law Privacy Torts.

"Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice," the Supreme Court has recognized that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549; *see also Groshek*, 865 F.3d at 887 (courts "consider whether the common law permitted suit in analogous circumstances"). The purported harm suffered by plaintiffs here bears no resemblance to a traditional privacy tort.

"As it has developed in the courts, the invasion of the right of privacy has been a complex of four distinct wrongs." Restatement (Second) of Torts § 652A cmt. b (1977). Traditionally, the right of privacy "is invaded by (a) unreasonable intrusion upon the seclusion of another, . . . (b) appropriation of the other's name or likeness, . . . (c) unreasonable publicity given to the other's private life, . . . [and] (d) publicity that unreasonably places the other in a false light before the

public." *Id*. § 652A(2); *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 424 n.4 (Ill. 2012). Three of those wrongs can be dispensed with quickly: Plaintiffs have not suffered an "appropriation of likeness" because they have not alleged that Google used their "likenesses" in connection with the sale of goods or services, for advertising, or for fundraising. *See* 765 ILCS 1075/5; 765 ILCS 1075/30. Plaintiffs have not suffered a "publicity" harm because there is no evidence that Google disseminated private information about them to the public. *See* Restatement (Second) of Torts § 652D cmt. a. And plaintiffs have not suffered a "false light" harm because Google did not publish falsehoods about plaintiffs. *See id*. § 652E cmt. a.

Only the first wrong—intrusion upon seclusion—is even arguably relevant here. But plaintiffs fall far short of showing they have suffered a comparable wrong. "[T]he core of [the intrusion] tort is the offensive prying into the private domain of another." *Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (citation omitted). "The examples forming the basis for the tort include invading an individual's home; an illegal search of his or her shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1180 (Ill. App. Ct. 2014). Thus, plaintiffs must show that Google "intruded into a private place, or . . . otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B cmt. c. They must also show that Google's purported intrusion was "not only offensive, but *highly* offensive to a reasonable person." *Schmidt v. Ameritech Illinois*, 768 N.E.2d 303, 312 (Ill. App. Ct. 2002). They cannot make that showing.

First, plaintiffs cannot show that Google "intruded into a private place" merely by receiving photographs voluntarily uploaded (either by plaintiffs or their friends) onto its servers.

"Neither side is arguing that . . . Google needed consent to upload the photographs to the cloud." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 n.11 (N.D. Ill. 2017).

Second, plaintiffs cannot show that Google "intruded into a private place" by generating face templates based on plaintiffs' photographs. *See* SACC ¶¶ 11, 31, 32, 40, 41. The law has long recognized that faces are *public*, and the Restatement makes clear that there is no intrusion-upon-seclusion liability for "observing [a plaintiff] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Restatement (Second) of Torts § 652B cmt. c; *accord United States v. Dionisio*, 410 U.S. 1, 14 (1973) ("No person . . . can reasonably expect that his face will be a mystery to the world."); *Schiller v. Mitchell*, 828 N.E.2d 323, 329 (Ill. App. Ct. 2005) (defendant did not intrude upon plaintiffs' seclusion by videotaping public areas). Plaintiffs themselves concede that their faces are public, albeit reluctantly. *See* Google SOF ¶ 60.

Thus, there is no evidence that Google's conduct involved "prying" into plaintiffs' private affairs, let alone "prying" that could be characterized as "*highly* offensive to a reasonable person." *Schmidt*, 768 N.E.2d at 312. Plaintiffs therefore cannot show that they suffered an invasion of privacy sufficient to confer standing. *See Take-Two*, 235 F. Supp. 3d at 517 (plaintiffs lacked standing under BIPA in part because the injuries they alleged were not "akin to a violation of the common law tort of intrusion on seclusion, which involves an unauthorized intrusion"); *see also Patel v. Zillow, Inc.*, No. 17-CV-4008, 2017 WL 3620812, *10 (N.D. Ill. Aug. 23, 2017) (rejecting intrusion-upon-seclusion claim where, as here, data was derived from public information); *Jacobson*, 19 N.E.3d at 1181 (affirming dismissal where plaintiff was filmed on "readily visible property" and the images of her revealed nothing that was "especially private").

-17-

Finally, plaintiffs' own behavior belies their invasion-of-privacy theory of standing. If plaintiffs truly believed that Google's technology was invasive, then presumably they would have steered clear of it once they understood how it worked. But they did not. ███████████

███████████████████████████████████████████████████████

██████████████████████████████████████ *See* Google SOF ¶ 27.

Rivera's conduct was similar. ███████████████████████████████

███████████████████████████████████████████████████████

██████████████████ *See* Google SOF ¶ 39. █████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ *See* Google SOF ¶ 40. ████████████████████████████

███████████████████████████████████████████████████████

*See* Google SOF ¶ 37. █████████████████████████████████████████

███████████████████ *See* Google SOF ¶ 38. Tellingly, Rivera never asked Gutierrez to stop photographing her, to stop uploading photographs to Google Photos, or to delete photographs that Gutierrez had uploaded to Google Photos. *See* Google SOF ¶ 41.

Because plaintiffs' own conduct shows that they did not suffer any invasion of privacy, their "resort to a theory of intrusion on seclusion, or privacy, cannot save their claims." *Take-Two*, 235 F. Supp. 3d at 518.

### 4. Plaintiffs Cannot Show Injury *Caused* by Google's Alleged Conduct.

Plaintiffs also cannot show that their supposed injuries are "fairly traceable to the challenged action[s] of the defendant." *Lujan*, 504 U.S. at 561 (citation and alteration omitted). Plaintiffs allege that Google has violated BIPA in two ways: by not providing compliant notice

and consent, and by failing to publish a retention schedule. *See* SACC ¶¶ 57-59, 67-69. The parties have agreed to defer resolution of whether Google did, in fact, fail to comply with those provisions. But even if it did, as plaintiffs say, plaintiffs' putative injuries are not traceable to Google's alleged noncompliance.

First, as to the notice-and-consent issue, there is simply no evidence that plaintiffs would have acted differently if Google had provided different or additional notice. *See* SACC ¶¶ 57-58, 67-68; *see also* 740 ILCS 14/15(b)(1)-(3). Indeed, the evidence shows the opposite: ████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ Even at his deposition, Weiss could not say that he would have acted differently if Google had prompted him for additional consent. *See* Google SOF ¶ 29. Because neither Rivera nor Weiss can show that they would have acted differently under different circumstances, they cannot show a causal connection between Google's conduct and any injuries they may have suffered. *See Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 518 (7th Cir. 2010) ("self-inflicted" injury not "traceable" to defendant's conduct for standing purposes); *Take-Two*, 235 F. Supp. 3d at 515 (BIPA plaintiffs lacked standing in part because they did not "claim that they would have foregone use of the [biometric technology] if they had received more extensive notice and consent").

Second, plaintiffs cannot show that they suffered injury as a result of Google's alleged failure to publish a retention schedule. *See* SACC ¶¶ 59, 69; *see also* 740 ILCS 14/15(a). There is no evidence that plaintiffs would have acted differently if Google had published different or additional retention information. Neither plaintiff even alleges as much. At his deposition, Weiss

-19-

testified that he did not bother to read, nor recalled reading, information about Google Photos that Google *had* published. *See* Google SOF ¶ 30. And Rivera testified that she does not read such information as a matter of practice. *See* Google SOF ¶ 48.

**B.     Plaintiffs Are Not "Aggrieved" Within the Meaning of BIPA.**

Even if the bare statutory violations that plaintiffs allege are sufficient to confer Article III standing (they are not), they are plainly not sufficient to render plaintiffs "person[s] aggrieved"—an independent statutory requirement for seeking relief under BIPA. 740 ILCS 14/20.  Google is entitled to summary judgment on that ground as well.

The test for Article III standing is separate from the test for whether a statute confers a cause of action, and motivated by different concerns. The former question is one of federal judicial power; it asks whether a plaintiff has a concrete enough stake in a case to warrant invoking the jurisdiction of a federal court. *See Lujan*, 504 U.S. at 559-60. The latter question is one of legislative intent; it asks whether the legislature, when creating a statute, intended for "*this particular class of persons* [to have] a right to sue" under it. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (citation omitted; emphasis added). There are many instances in which a plaintiff "may well have an injury-in-fact cognizable under Article III," but falls outside "the 'scope of the private remedy created.'" *Id.* at 1386, 1390 (citation omitted); *accord Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015). Indeed, it is generally "unlike[y]" that a legislature would intend for every conceivable Article III plaintiff to have a statutory right "to recover," and courts should avoid overly "expansive reading[s]" of statutes that lead to such a result. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266 (1992).

These principles apply with full force to BIPA, where the Illinois legislature created a private right of action but expressly confined it to persons "aggrieved by" a statutory violation. 740 ILCS 14/20. As explained below, by using the term "aggrieved," the legislature limited BIPA's private cause of action to persons actually harmed or adversely affected by a statutory violation. Plaintiffs fail to meet that threshold requirement.

### 1. Only a Person Who Suffers Actual Harm Is "Aggrieved."

While BIPA does not define the term "aggrieved," the Illinois Appellate Court recently gave it a clear meaning: A person is "aggrieved" if he or she has suffered an "actual injury, adverse effect, or harm" beyond the alleged statutory violation. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 20. That decision is binding upon this Court. It is also consistent with BIPA's text, structure, history, and purpose, as well as with how other courts in this Circuit—state and federal—have interpreted comparable statutory terms.

As an initial matter, *Rosenbach* is controlling here under the *Erie* doctrine. When confronted with a question of state law, a federal court must "ensure[] that the law applied in federal proceedings is the law that *ultimately* would be applied were the case to be litigated in the state courts." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002) (internal quotation marks and citation omitted). When a state's highest court has not yet opined on a state law question, federal courts must "give great weight to the holdings of the state's intermediate appellate courts" and may "deviate from those holdings *only when there are persuasive indications that the highest court of the state would decide the case differently.*" *Id.* at 637 (emphasis added). That rule, like *Erie* itself, is a mandatory one, and courts in this Circuit have adhered to it faithfully. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003).

-21-

The *Rosenbach* decision is controlling under this framework. It represents the highest state court ruling on the meaning of BIPA's "aggrievement" requirement, and there are no indications—and certainly no "clear and persuasive" ones, *Stone Container Corp.*, 323 F.3d at 509—that the Illinois Supreme Court would decide the matter differently. All indications point in the opposite direction.

In *Rosenbach*, the plaintiff (Rosenbach) alleged that the defendant (Six Flags) violated BIPA by collecting fingerprints of Rosenbach's minor son in connection with the purchase of an annual pass. Rosenbach argued that mere noncompliance with BIPA was enough to render a plaintiff aggrieved and bring her within the ambit of the statute. *See id*. ¶ 24. Six Flags moved to dismiss, arguing that "a person who suffers no actual harm has not been 'aggrieved'" within the meaning of BIPA. *Id*. ¶ 1. The trial court certified the following question for appeal: "[W]hether an individual is an aggrieved person [under BIPA] . . . when the only injury he or she alleges is a violation of [BIPA] by a private entity that collected his or her biometric identifiers and/or biometric information without providing him or her the disclosures and obtaining the written consent required by [the statute]." *Id*. ¶ 15. In a unanimous decision, the Illinois Appellate Court answered that question with a definitive "no," holding that "there must be an actual injury, adverse effect, or harm in order for [a] person to be 'aggrieved.'" *Id*. ¶¶ 19, 20. Further, that harm must go *beyond* the statutory violation—having one's "biometric information [] collected without the disclosures and written consent required" was not enough. *Id.* ¶ 13. The Appellate Court was unequivocal on this point: "If a person alleges only a technical violation of the Act without alleging any injury or adverse effect, then he or she is not aggrieved." *Id.* ¶ 28.

*Rosenbach* was rightly decided according to all the "traditional tools of statutory interpretation." *Lexmark*, 134 S. Ct. at 1387. Beginning with the text, the word "aggrieved" has

an ordinary and well-understood meaning: It connotes an actual harm or injury. *See Rosenbach*, 2017 Ill. App (2d) 170317, ¶ 20. Black's Law Dictionary, for instance, defines "aggrieved" to mean "having been *harmed* by an infringement of legal rights." Black's Law Dictionary (10th ed. 2014) (emphasis added). And when the Illinois legislature has defined "aggrieved" in other statutes, it has adhered to this ordinary meaning. In the Illinois Human Rights Act, for instance, it described an "aggrieved party" as "a person who is alleged or proved to have been *injured* by a civil rights violation." 775 ILCS 5/1-103(B) (emphasis added). And in the Soil and Water Conservation Districts Act, it defined an "aggrieved party" as "any person whose property, resources, interest or responsibility is being *injured or impeded* in value or utility." 70 ILCS 405/3.20 (emphasis added). Thus, as a matter of plain English, and especially as a matter of Illinois law, an "aggrieved" individual is one who has experienced an "actual injury, adverse effect, or harm." *Rosenbach*, 2017 IL App (2d) 170317, ¶ 20.

The rule against superfluity supports this reading. The phrase "persons aggrieved" appears in BIPA's remedial section, the purpose of which is to define the universe of persons entitled to sue. Had the Illinois legislature intended for "any person" or "any customer" to have a cause of action—without an actual harm requirement—it could have said so, as it has elsewhere. *See* 220 ILCS 5/22-501 (Illinois Cable and Video Customer Protection Law, providing that "[a]ny customer" may bring suit). Instead, the legislature added the requirement that a BIPA plaintiff be "aggrieved." 740 ILCS 14/20. "A determination that a technical violation of the statute is actionable" would ignore that choice and "render the word 'aggrieved' superfluous." *Rosenbach*, 2017 IL App (2d) 170317, ¶ 23. Such a reading should be avoided. *See Brucker v. Mercola*, 886 N.E.2d 306, 313 (Ill. 2007) ("Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous.").

-23-

BIPA's purpose and legislative history buttress the *Rosenbach* interpretation. As the *Take-Two* court explained, BIPA's aim is to protect consumers' information, not to provide liability for violations that result in no actual harm. The legislature was concerned that the absence of "reasonable safeguards" would "discourage the proliferation" of biometrics-facilitated transactions. 235 F. Supp. 3d at 504. It did not deem the use of biometrics "in-of-itself undesirable or impermissible." *Id*. Instead, BIPA targeted the *misuse*, not the use, of biometrics. *Id*. That BIPA aims to prevent specific, palpable harms (e.g., from disclosure or misuse) supports the view that only a person who is truly injured may seek relief under the statute.

Finally, *Rosenbach* is consistent with the decisions of several courts that have addressed the same or similar statutory language. *See Stone Container Corp.*, 323 F.3d at 510 (one indication that a state supreme court is unlikely to diverge from a state appellate court's decision is the decision's consistency with other case law). Before *Rosenbach* was decided, two federal courts independently concluded that a person is not "aggrieved" under BIPA absent actual harm. *See Take-Two*, 235 F. Supp. 3d at 521; *Smarte Carte*, 2016 WL 4077108, at *4. And since *Rosenbach* was decided, three Illinois trial courts have followed *Rosenbach* and dismissed BIPA claims, with prejudice, for lack of actual harm. *See Yeske v. Macoupin Energy, LLC*, No. 17-L-0000124, Order (Macoupin County Ill. Apr. 2, 2018) (Deihl, J.) (attached as Exhibit M to the Declaration of Susan D. Fahringer ("Fahringer Declaration")); *Sekura v. Krishna Schaumburg Tan, Inc.*, No. 16 CH 04945, Order (Cook County Ill. Jan. 16, 2018) (Atkins, J.) (attached as Exhibit N to the Fahringer Declaration); *Rottner v. Palm Beach Tan, Inc.*, No. 15 CH 16695, Order (Cook County Ill. Mar. 2, 2018) (Gamrath, J.) (attached as Exhibit O to the Fahringer Declaration). Notably, in both *Sekura* and *Rottner*, vague allegations of invasion of privacy—premised on statutory violations and nothing more—were insufficient to avoid dismissal.

-24-

Courts in this Circuit have also construed "aggrievement" provisions in other statutes to require actual harm. In *Sterk v. Redbox Automated Retail*, for example, the Seventh Circuit held that improper retention of information did not constitute an injury sufficient to satisfy the "aggrieved" party requirement of the Video Privacy Protection Act. 672 F.3d 535, 538 (7th Cir. 2012). Similarly, in *Gubala*, the Seventh Circuit held that the plaintiff failed to allege he was "aggrieved" under the Cable Communications Policy Act because he had failed to provide "evidence that . . . any of the personal information that he supplied to the company when he subscribed had leaked and caused financial or other injury to him or had even been at risk of being leaked." 846 F.3d at 910-11. And in *Padilla v. Dish Network L.L.C.* ("*Padilla I*"), the Northern District of Illinois dismissed claims under a federal privacy statute allowing for recovery by "[a]ny person aggrieved" because plaintiff's personal information had been retained without any harm. No. 12-cv-7350, 2013 WL 3791140, at *3, *5 (N.D. Ill. July 19, 2013).[4]

*In re Facebook Biometric Information Priv. Litig.*, No. 3:15-cv-03747-JD, 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018), does not change the analysis. That decision dealt with class certification rather than with whether specific plaintiffs had demonstrated "aggrievement" for the purposes of summary judgment, and it considered these issues in the context of Facebook, where both the technology and its described effects on personal privacy are different. In addition, it incorrectly concluded that *Rosenbach* was merely "a non-binding data point" that the court could "part company with," *id.* at *6. The *Erie* jurisprudence in this Circuit counsels that *Rosenbach* is a binding decision that this Court cannot simply ignore.

---

[4] Other examples abound. *See, e.g.*, *Williams v. Merle Pharmacy, Inc.*, No. 15-cv-1262, 2015 WL 6143897, at *4 (C.D. Ill. Oct. 19, 2015) (Illinois Wage Payment and Collection Act claim dismissed for lack of harm); *Diedrich v. Ocwen Loan Servicing, LLC*, No. 13-CV-693, 2015 WL 1885630, at *10 (E.D. Wis. Apr. 24, 2015) (summary judgment granted for defendant where the cause of action was limited to persons "aggrieved" and plaintiff had no injury), *aff'd*, 839 F.3d 583 (7th Cir. 2016).

The *In re Facebook* decision also simply misunderstood *Rosenbach*. That court read *Rosenbach* to mean that "injury to a privacy right is enough to make a person aggrieved under BIPA." 2018 WL 1794295, at *6. In fact, *Rosenbach* held that when a plaintiff's claimed "injury to a privacy right" boils down to nothing more than a bare statutory violation, it is *not* sufficient. As the *Rosenbach* court noted, the plaintiff's "assert[ion]" in that case was that her son's "right to privacy is a 'personal right' or a 'legal right' that ha[d] been 'adversely affected'" through a BIPA violation, thereby making her "aggrieved." *Rosenbach*, 2017 IL App (2d) 170317, ¶ 20. In her complaint, the plaintiff had not described a "harm or injury" to her son's privacy interests beyond the BIPA violation. *Id.* ¶ 20 n.1. *That* is what *Rosenbach* found insufficient to make out "aggrievement" under BIPA. And that conclusion aligns with BIPA's text, structure, and history, as well as with Illinois law more broadly.[5]

## 2. Plaintiffs Have Suffered No Actual Harm.

*Rosenbach* is fatal to plaintiffs' claims. Like the plaintiffs in *Rosenbach*, Rivera and Weiss cannot show that an alleged failure to comply with BIPA caused them "an actual injury, adverse effect, or harm." *Id.* ¶ 20. In fact, this case is much easier than *Rosenbach* for at least two reasons. First, Rivera and Weiss identify *less* harm than the plaintiff in *Rosenbach*. In *Rosenbach*, the plaintiff at least alleged that she would not have purchased products from the defendant had she known of its alleged violations of BIPA. *See Rosenbach*, 2017 IL App (2d) 170317, ¶ 1. Here, Rivera and Weiss cannot even argue, let alone show, that they would have acted differently if they had known of the violations they allege. *See supra* at 19-20. Second, in

---

[5] The Illinois Supreme Court's decision in *American Surety Co. v. Jones*, 51 N.E.2d 122 (Ill. 1943) is consistent with *Rosenbach*. There, the Illinois Supreme Court held that the plaintiffs were not "aggrieved" because they lacked a "direct interest" in the non-renewal of an insurance carrier's business certificate. *Id.* at 125. Likewise, *Rosenbach* held that a bare statutory violation does not make one "aggrieved."

*Rosenbach*, plaintiffs had only to *allege* actual harm. Here, Google has moved for summary judgment after plaintiffs deployed the full arsenal of federal discovery. As a result, plaintiffs must do more than say they were harmed; they must adduce some actual evidence that they were harmed. Because they cannot do so, Google is entitled to summary judgment.

**C.      Plaintiffs Are Not Entitled to Any Remedy Under BIPA.**

Putting aside plaintiffs' inability to establish Article III standing or "aggrieved" status, they also cannot meet the baseline requirements for the forms of relief they seek. The Court should grant summary judgment to Google for that reason as well.

**1.      Plaintiffs Are Not Entitled to Actual Damages.**

Plaintiffs do not even ask for "actual damages" under 740 ILCS 14/20, *see* SACC ¶ 71, but it bears emphasizing that they would not be entitled to any. As discussed above, plaintiffs did not suffer any harm, let alone actual damages. And plaintiffs cannot obtain actual damages based on the notion "that the [statutory] violation . . . made [them] *feel* aggrieved" because such damages "could not possibly be quantified." *Gubala*, 846 F.3d at 911.

**2.      Plaintiffs Are Not Entitled to Liquidated Damages.**

For the same reason, plaintiffs are not entitled to liquidated damages under BIPA. "[L]iquidated damages are intended to be an estimate of actual damages." *Sterk*, 672 F.3d at 538. This principle traces to the common law of contracts: "The common law principle is that a liquidated damages provision is enforceable when it appears in advance that it would be difficult at the time of breach to compute actual damages and the liquidated damages provision is a good faith attempt to estimate what actual damages would be." *Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 593 (7th Cir. 1994); *see also Penske Trust Leasing Co., L.P. v. Chemetco, Inc.*, 725 N.E.2d 13, 20 (Ill. App. Ct. 2000) (same). By contrast, when liquidated

damages provisions are "unreasonably large" and do not approximate the plaintiff's injury, "Illinois courts have adhered to the common law principle that . . . [such] provisions are unenforceable as penalty clauses." *Pace*, 31 F.3d at 593 (collecting cases).

When confronted with liquidated damages clauses in statutes, courts should and do similarly view them as efforts by the legislature to approximate a plaintiff's actual damages. In turn, if a plaintiff cannot demonstrate *any* injury as a result of a statutory breach, liquidated damages should not be available—for they would not, in such an instance, be a reasonable approximation of the plaintiff's actual harm. *See Sterk*, 672 F.3d at 538-539.

The Supreme Court's decision in *Doe v. Chao*, 540 U.S. 614 (2004), is instructive. There, the Court confronted a liquidated damages provision in the Privacy Act of 1974, which provided for "actual damages sustained by the individual . . ., but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A). The question in *Chao* was whether a plaintiff could receive $1,000 under the statute "on proof of nothing more than a statutory violation." 540 U.S. at 620. The Court held that the answer was "no." *See id.* at 620-21. Applying *Chao*, federal courts have reached the same conclusion for several other statutes. *See Sterk*, 672 F.3d at 538-39 (liquidated damages under the Video Privacy Protection Act not available to a plaintiff who suffered no actual damages); *Van Alstyne v. Elec. Sciptorium, Ltd.*, 560 F.3d 199, 205-06 (4th Cir. 2009) (same, under the Stored Communications Act); *Padilla v. DISH Network L.L.C.* ("*Padilla II*"), No. 12-cv-7350, 2014 WL 539746, at *3 (N.D. Ill. Feb. 11, 2014) (same, under the Satellite Home Viewer Extension and Reauthorization Act).

That conclusion should also apply here. BIPA—like the statute in *Chao*—couples its liquidated damages awards to a plaintiff's "actual damages." *See* 740 ILCS 14/20(1)-(2). That coupling is a strong indication that the Illinois legislature intended for BIPA's statutory damages

awards to operate like those in *Chao* and those under the common law—that is, to act as approximations of the "actual" damages a plaintiff would suffer, while ensuring a base recovery. To hold otherwise would put BIPA "at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Doe*, 540 U.S. at 621.

### 3. Plaintiffs Are Not Entitled to Injunctive Relief.

Finally, plaintiffs are not entitled to injunctive relief under BIPA. Injunctive relief is appropriate only when a party shows that she has a clear and ascertainable right that needs protection, there is no adequate remedy at law, and she will suffer irreparable harm if injunctive relief is not granted. *See Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998); *Helping Others Maintain Envtl. Standards v. Bos*, 941 N.E.2d 347, 365 (Ill. App. Ct. 2010). Plaintiffs cannot establish any of those elements. That is especially true for irreparable harm; ████████████████████████████████████████████████ ████████████████████████████████████████████ Nor can they be irreparably harmed by a service that they may cease using (in Weiss's case) or simply avoid (in Rivera's case) at any time. Plaintiffs therefore cannot seek injunctive relief. *See Gubala*, 846 F.3d at 911 (plaintiff who could not establish "harm reparable by an award of damages" could not establish "irreparable harm (the condition for obtaining [injunctive] relief")).

## IV. CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to Google that plaintiffs lack Article III standing; that plaintiffs do not have a cause of action under BIPA because they are not "aggrieved"; and that plaintiffs are not entitled to any remedy under BIPA. Accordingly, the Court should dismiss the case.

DATED: April 23, 2018                    Respectfully Submitted,

                                         By: /s/ Susan D. Fahringer
                                             Susan D. Fahringer

                                         **PERKINS COIE LLP**
                                         Susan D. Fahringer, *admitted pro hac vice*
                                         SFahringer@perkinscoie.com
                                         1201 Third Avenue, Suite 4900
                                         Seattle, WA 98101-3099
                                         Telephone: 206.359.8000
                                         Facsimile: 206.359.9000

                                         Debra R. Bernard (ARDC No. 6191217)
                                         DBernard@perkinscoie.com
                                         131 South Dearborn Street, Suite 1700
                                         Chicago, Illinois 60603-5559
                                         Telephone: 312.324.8400
                                         Facsimile: 312.324.9400

                                         Sunita Bali, *admitted pro hac vice*
                                         SBali@perkinscoie.com
                                         505 Howard Street, Suite 1000
                                         San Francisco, CA 94105
                                         Telephone: 415.344.7000
                                         Facsimile: 415.344.7050

                                         **HOGAN LOVELLS US LLP**
                                         Neal Kumar Katyal, *admitted pro hac vice*
                                         neal.katyal@hoganlovells.com
                                         555 Thirteenth St., N.W.
                                         Washington, DC 20004
                                         Telephone: 202.637.5528
                                         Facsimile: 202.637.5910

                                         Thomas P. Schmidt, *pro hac vice application
                                         pending**
                                         thomas.schmidt@hoganlovells.com
                                         875 Third Avenue
                                         New York, NY 10022
                                         Telephone: 212.918.3000
                                         Facsimile: 212.918.3100

                                         Sara A. Solow, *pro hac vice application*

-30-

*pending\**
sara.solow@hoganlovells.com
1735 Market St., Floor 23
Philadelphia, PA 19103
Telephone: 267.675.4600
Facsimile: 267.675.4601

Attorneys for Google LLC