IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDABETH RIVERA, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No.: 1:16-cv-02714<br><br>Judge: Honorable Edmond E. Chang<br><br>Magistrate Judge Michael T. Mason |
| JOSEPH WEISS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No.: 1:16-cv-02870<br><br>Judge: Honorable Edmond E. Chang<br><br>Magistrate Judge Michael T. Mason<br><br>**PUBLICLY FILED<br>REDACTED VERSION** |

## GOOGLE LLC'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 3

    A. Plaintiffs Lack Article III Standing............................................................ 3

        1. Plaintiffs Have Not Suffered a Concrete Injury In Fact ........................... 3

        2. *Patel* Was Wrongly Decided ................................................... 5

        3. Plaintiffs' Alleged Harms Do Not Resemble Common Law Torts ......... 10

        4. Plaintiffs' Injuries Were Not Caused by Google's Alleged Conduct ...... 12

    B. Plaintiffs Are Not "Aggrieved" Within the Meaning of BIPA........................... 14

        1. *Rosenbach* Is Binding on This Court and Plaintiffs Offer No Sound Reason to Depart From It.................................................... 14

        2. Numerous Cases and Statutes Confirm That "Aggrieved" Requires Actual Harm.................................................................. 16

        3. Plaintiffs' Reading Of "Aggrieved" Would Produce Absurd Results...................................................................... 18

    C. Plaintiffs Are Not Entitled to Damages or Injunctive Relief Under BIPA.......... 18

III. CONCLUSION................................................................................................ 20

-i-

**TABLE OF AUTHORITIES**
(continued)

Page

CASES

*Allstate Ins. Co. v. Menards Inc.*,
285 F.3d 630 (7th Cir. 2002) .......................................................................2, 14

*American Surety Co. v. Jones*,
51 N.E.2d 122 (Ill. 1943) ..........................................................................15, 16

*Bank of America Corp. v. City of Miami*,
137 S. Ct. 1296 (2017) ....................................................................................17

*Banks v. Fuentes*,
No. 07 C 784, 2012 WL 6184880 (N.D. Ill. Dec. 11, 2012) ...........................3, 8, 10

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .............................................................................5

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................................................18

*Braitberg v. Charter Commc'ns, Inc.*,
836 F.3d 925 (8th Cir. 2016) .........................................................................3, 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........................................................................................5

*Coldwate v. Alcatel-Lucent USA, Inc.*,
No. 10-CV-4918, 2012 WL 5077718 (N.D. Ill. Oct. 18, 2012) ....................3, 8, 10

*Dixon v. Washington & Jane Smith Cmty.*,
No. 17 C 8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018) ................................8

*Doe v. Chao*,
540 U.S. 614 (2004).................................................................................19, 20

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006).......................................................................................20

*Gladstone Realtors v. Village of Bellwood*,
441 U.S. 91 (1979).........................................................................................17

*Goings v. UGN, Inc.*,
No. 17-cv-9340, 2018 WL 2966970 (N.D. Ill. June 13, 2018).............................6

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982).......................................................................................18

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........................................................................ passim

*Hancock v. Urban Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016) .................................................................................4

*In re Facebook Biometric Info. Privacy Litig.*,
No. 3:15-cv-03747-JD, 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018) ..................16

*In re Harmon's Estate*,
295 N.E.2d 66 (Ill. App. 1973) .............................................................................16

*Jacobson v. CBS Broad., Inc.*,
19 N.E.3d 1165 (Ill. App. Ct. 2014) .....................................................................17

*Lane v. Bayview Loan Servicing, LLC*,
No. 15 C 10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016) ................................7

*Lewis v. Casey*,
518 U.S. 343 (1996).........................................................................................18, 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................5

*McCollough v. Smarte-Carte, Inc.*,
No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) .............................8, 9

*Meyers v. Nicolet Rest. of De Pere, LLC*,
843 F.3d 724 (7th Cir. 2016) ..............................................................................1, 6

*New Hampshire v. Holder*,
293 F.R.D. 1 (D.C. Cir. 2013) ..............................................................................17

*North Federal Sav. & Loan Ass'n of Chicago v. Becker*,
182 N.E.2d 155 (Ill. 1962) ....................................................................................16

*Panhandle Eastern Pipe Line Co. v. FERC*,
198 F.3d 266 (D.C. Cir. 1999) ..............................................................................17

*Patel v. Facebook, Inc.*,
290 F. Supp. 3d 948 (N.D. Cal. 2018) ............................................................ passim

*Patel v. Facebook, Inc.*,
No. 18-80053 (9th Cir. May 29, 2018) ...................................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page**

*People v. Ortiz,*
196 Ill. 2d 236 (2001) ................................................................15

*Pro's Sports Bar & Grills, Inc. v. City of Country Club Hills,*
589 F.3d 865 (7th Cir. 2009) ......................................................19

*Richards v. NLRB,*
702 F.3d 1010 (7th Cir. 2012) ....................................................17

*Robins v. Spokeo, Inc.,*
867 F.3d 1108 (9th Cir. 2017) ....................................................10

*Rosenbach v. Six Flags Entm't Corp.,*
2017 IL App (2d) 170317 (Dec. 21, 2017) ....................2, 14, 15, 16

*Rosenbach v. Six Flags Entm't Corp.,*
2018 WL 2452249 (Ill. Sup. Ct. May 30, 2018) ..........................14

*Ross v. AXA Equitable Life Ins. Co.,*
115 F. Supp. 3d 424 (S.D.N.Y. 2015) ..........................................7

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ........................................................3, 6, 10

*Sterk v. Redbox Automated Retail, LLC,*
672 F.3d 535 (7th Cir. 2012) ..................................................4, 17

*Thompson v. N. Am. Stainless, L.P.,*
562 U.S. 170 (2011) ....................................................................18

*United States v. Dionisio,*
410 U.S. 1 (1973) ........................................................................12

*Van Patten v. Vertical Fitness Grp., LLC,*
847 F.3d 1037 (9th Cir. 2017) ....................................................10

*Vigil v. Take-Two Interactive Software, Inc.,*
235 F. Supp. 3d 499 (S.D.N.Y. 2017) ................................. passim

**STATUTES**

740 ILCS 14/15(c) ..........................................................................11

740 ILCS 14/20(1) ..........................................................................18

740 ILCS 14/20(4) ..........................................................................19

**TABLE OF AUTHORITIES**
**(continued)**

Page

Cable Communications Policy Act ................................................................................2

Fair Housing Act ...............................................................................................17

Illinois' Biometric Information Privacy Act.......................................................... passim

National Labor Relations Act .................................................................................17

Natural Gas Act...................................................................................................17

Video Privacy Protection Act ................................................................................17

Voting Rights Act ...............................................................................................17

**RULES**

Ill. Sup. Ct. R. 315 ..............................................................................................15

L.R. 56.1(b)(3)(C).......................................................................................3, 8, 10

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652B (1977) ..............................................................11

Restatement (Second) of Torts § 652B cmt. c (1977) ...............................................11, 12

Restatement (Second) of Torts § 652C cmt. a (1977) ..................................................11

*The Right to Privacy*, 4 Harv. L. Rev. 193 (1990)........................................................12

U.S. Const. art. III.......................................................................................... passim

## I.   INTRODUCTION

Plaintiffs' case fails due to a single undisputed point: there is zero evidence of real-world harm to plaintiffs flowing from Google's alleged noncompliance with Illinois' Biometric Information Privacy Act ("BIPA"). As a result, plaintiffs have not established Article III standing, they have no statutory cause of action, and they are not entitled to any remedy.

It is a bedrock principle of federal jurisdiction that there is no Article III case or controversy unless a plaintiff has suffered a concrete injury in fact. Here, plaintiffs claim that the "acquisition and retention" of "[b]iometric identifiers" by Google violated their privacy. Plaintiffs' Response to Mot. for Summary J. at 2 ("Opp."). But that is just another way of saying that they are injured because Google violated BIPA. And the alleged violation of a statutory right—even a right "characterized as 'substantive'"—is not itself an injury in fact. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016). Plaintiffs are thus wrong to suggest that "actual harm" is "unnecessary." Opp. at 12. To the contrary, a "violation of a statute that causes no harm does not trigger a federal case." *Meyers*, 843 F.3d at 727 n.2.

That is precisely the case here. Plaintiffs invoke the right to privacy, but "privacy" is not a talisman that automatically satisfies Article III's injury requirement. All plaintiffs point to is ██████████████████████████████████████████████████████ ████████████████████████████ That does not constitute an injury in fact, as confirmed by both federal law and decades of common law. If there were any doubt about whether plaintiffs have suffered cognizable injuries, it is dispelled by their own actions: ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████

Plaintiffs also lack a cause of action under BIPA because, without some actual harm, they are not "aggrieved." *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶ 20 (Dec. 21, 2017). Plaintiffs do not even try to show that they have suffered actual harm as required by *Rosenbach*. Rather, they ask the Court to disregard *Rosenbach* and make its own, *de novo* "predict[ion]" on how the Illinois Supreme Court will rule. Opp. at 18. But an Illinois appellate decision may not be so easily overlooked; it is entitled to "great weight," *Allstate Ins. Co. v. Menards Inc.*, 285 F.3d 630, 637 (7th Cir. 2002), and the best way to "predict[]" how Illinois courts will rule on an issue is to look at what they have actually done. *Id.*

Lastly, because plaintiffs suffered no harm, they are not entitled to a remedy under BIPA.

Plaintiffs complain that Google's position would "emasculate the entire statute." Opp. at 1. Not so. Requiring a plaintiff to show that she has been harmed before invoking BIPA and its draconian remedies would allow the statute to protect against *harmful* collections and uses of biometric information, which is exactly what the legislature intended. Google's reading would not "emasculate" the statute any more than *Gubala* "emasculated" the Cable Communications Policy Act. If the "limited private enforcement that the doctrine of standing permits" were inadequate to achieve the goals of BIPA, the legislature "could [have] enacted" a "law that authorizes the government to enforce" it. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017). Not only did the legislature decline to do that, it specifically narrowed BIPA's cause of action to those actually "aggrieved." The Court should grant Google's motion.

## II. ARGUMENT

### A. Plaintiffs Lack Article III Standing.

#### 1. Plaintiffs Have Not Suffered a Concrete Injury In Fact.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). And to be "concrete," the injury

must "actually exist." *Id*. at 1548.

Plaintiffs all but concede that they lack standing under that framework.[1] They do not point to *any* "actually exist[ing]" harm. Rather, they take the position that "actual harm" is not even "required." Opp. at 12. While they correctly observe that "intangible" harms can sometimes suffice to establish injury in fact, Opp. at 7, they do not specify any intangible harm here beyond Google's alleged collection of their biometric identifiers in violation of BIPA. That repetition of the statute's own terms is not enough to show standing.

*Gubala* makes that point plain. There, the Seventh Circuit held that the "retention" of "personal information," "on its own," is not an injury in fact that gives rise to standing. 846 F.3d at 910. The Court "assume[d]" that the information was possessed in violation of a statute. *See id*. But that did not matter. The plaintiff's "problem" in *Gubala* was "that while he might well be able to prove a violation of [the statute], he ha[d] not alleged any plausible (even if attenuated) risk of harm to himself from such a violation—any risk substantial enough to be deemed 'concrete.'" *Id*. at 911; *see also Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016).

Plaintiffs devote just one sentence to distinguishing *Gubala*, *Braitberg*, and *Hancock*: "The plaintiffs in all these cases directly provided the information in question to the defendants and complained only about how it subsequently had been handled." Opp. at 12. This is incorrect.

---

[1] There is no evidence that plaintiffs suffered any financial, physical, emotional, or psychological injury as a result of Google's alleged conduct. *See* Google LLC's Rule 56.1(a) Statement of Undisputed Material Facts ¶ 56 (Dkt. 155) ("Google's SOF"). Plaintiffs purport to dispute that point. *See* Plaintiffs' Responses to Defendant's Statement of Undisputed Material Facts ¶ 56 (Dkt. 167-1) ("Responses to Google's SOF"). But they offer no evidence to rebut it, instead arguing (incorrectly) that plaintiffs have suffered different harms adequate to support Article III standing. This Court should therefore deem the point admitted. *See* L.R. 56.1(b)(3)(C); *see also Banks v. Fuentes*, No. 07 C 784, 2012 WL 6184880, at *4 (N.D. Ill. Dec. 11, 2012) (deeming facts that were improperly controverted admitted); *Coldwate v. Alcatel-Lucent USA, Inc.*, No. 10-CV-4918, 2012 WL 5077718, at *1 n.1 (N.D. Ill. Oct. 18, 2012) (denials that are "unresponsive to the facts asserted . . . are ineffectual and deemed to be admissions").

For starters, in *Hancock*, the claim was not merely that the defendant held on to information that had been lawfully obtained. Rather, plaintiffs claimed that the defendants had "*requested and recorded*" their zip codes in violation of a consumer protection law. 830 F.3d at 514 (emphasis added). Nevertheless, their claim failed for lack of standing.

Moreover, plaintiffs' purported distinction simply does not make a difference. The core holding of *Gubala* was that a "company's possession" of "personal information" is not itself a concrete harm. 846 F.3d at 912. Plaintiffs fail to explain how Google's alleged ███████ ████████████████████████████████████████████████████ inflicts harm that is any more concrete than the harm at issue in *Gubala*. The ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ It is no answer to say that the information at issue in *Gubala* was *initially* in the defendant's lawful possession. The premise of the opinion was that the defendant's possession of the personal information was *unlawful* by the time the suit was filed. *See* 846 F.3d at 910. The bottom line is that, if personal "information . . . remain[s] secreted in [a company's] files," there is "no injury." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012). That is exactly the situation here.

Plaintiffs suggest that they have standing under the *Gubala* framework because there may be some risk of a future data breach. But they admit they have no evidentiary support that such a breach is actual or even imminent. *See* Opp. at 1. Merely asserting, without any support, that Google may, "in the long run," suffer a data breach "like Yahoo" is insufficient to defeat summary judgment. "Standing . . . requires, at the summary judgment stage, a factual showing of perceptible harm." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992) (internal quotation marks

and citation omitted). Plaintiffs' pure speculation falls far short of a "factual showing." *Id.*; *see Beck v. McDonald*, 848 F.3d 262, 274-276 (4th Cir. 2017) (allegations about hypothetical data breaches too speculative to confer standing). And even if plaintiffs could adduce some evidence of a risk of future harm, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks, alteration, and citation omitted). Plaintiffs do not even attempt to meet the "certainly impending" standard.

The only other "evidence" plaintiffs offer to support their assertion of harm are excerpts from their deposition testimony, in which they self-servingly say ███████████████ ███████████████ But the fact that a plaintiff may "*feel* aggrieved" by a statutory violation does not transform that violation into a concrete harm. *Gubala*, 846 F.3d at 911 (emphasis in original).

## 2. *Patel* Was Wrongly Decided.

Plaintiffs lean heavily on a single district court decision, *Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948 (N.D. Cal. 2018). *See* Opp. at 11. But *Patel* is from a different circuit and its reasoning is deeply flawed.[2]

The long passage from the *Patel* opinion quoted in plaintiffs' brief (at 11-12) reveals *Patel*'s stark inconsistency with *Spokeo*. The core conclusion of *Patel* was that "the abrogation of the procedural rights mandated by BIPA *necessarily* amounts to a concrete injury." 290 F. Supp. 3d at 954 (emphasis added). In *Spokeo*, the Supreme Court said precisely the opposite:

---

[2] Indeed, the Ninth Circuit recently granted a petition for interlocutory appeal and stayed all district court proceedings to review the district court's order granting class certification which, among other things, addressed whether the *Patel* plaintiffs have suffered any "actual injury" as a result of Facebook's alleged collection of their biometric information. *See* Order, Dkt. 24, at 1, *Patel v. Facebook, Inc.*, No. 18-80053 (9th Cir. May 29, 2018); Facebook's Emergency Motion for a Stay, Dkt. 16, at 13-14, *Patel v. Facebook, Inc.*, No. 18-80053 (9th Cir. May 25, 2018) (raising *Spokeo* issue).

"*Article III standing requires a concrete injury even in the context of a statutory violation*." 136 S. Ct. at 1549 (emphasis added).

*Patel* reasoned that "the Illinois legislature codified a right of privacy in personal biometric information," and therefore a "violation of the BIPA notice and consent procedures infringes the very privacy rights the Illinois legislature sought to protect by enacting BIPA." 290 F. Supp. 3d at 953-54; *accord* Opp. at 16-17. Google respectfully submits that holding is wrong under *Spokeo* and cases interpreting *Spokeo*, including cases in the Seventh Circuit. The mere fact that a statute has "codified a right" does *not* mean that a violation of that right inflicts a concrete harm; otherwise, the core holding of *Spokeo* would be meaningless and easily circumvented. *See, e.g.*, *Meyers*, 843 F.3d at 727 n.2 (even where a statute grants a substantive right, "its violation must be accompanied by an injury-in-fact" to give rise to standing). That is why "the vast majority of courts to have evaluated standing in [the] context [of BIPA] have acknowledged that more than 'bare procedural violations' of the statute must be alleged to satisfy the requirement of a 'concrete and particularized' injury that is 'actual or imminent, not conjectural or hypothetical.'" *Goings v. UGN, Inc.*, No. 17-cv-9340, 2018 WL 2966970, at *2 (N.D. Ill. June 13, 2018) (citations omitted).[3]

---

[3] The alleged deprivation of additional or different notice under BIPA is not itself a cognizable harm sufficient to support Article III standing for Weiss or Rivera. Indeed, plaintiffs do not even claim a stand-alone "informational" harm, and for good reason: "BIPA's 'core object' is to protect biometric data, not to require the disclosure of information," so "BIPA's notice provision[] is insufficient, on its own, to support federal jurisdiction." *Goings*, 2018 WL 2966970, at *3-4. Nor have plaintiffs linked the alleged deprivation of information to any real-world harm that is itself cognizable under Article III. *Cf. Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016) (finding standing where the "debtor is getting information in an attempt to verify a *monetary* obligation that the creditor asserts"). Finally, any claim to informational injury is belied by plaintiffs' own behavior: ████████████████████████████████████████████████████████████ *See Take-Two*, 235 F. Supp. 3d at 515 ("[P]laintiffs do not claim that they would have foregone use of the . . . feature if they had received more extensive notice and consent."). As a result, plaintiffs cannot claim that they suffered any harm as a result of Google's alleged failure to comply with plaintiffs' interpretation of BIPA's notice provisions.

Plaintiffs, echoing *Patel*, counter that "[l]egislation is entitled to no less respect than common-law judicial decision-making in recognizing legal rights." Opp. at 7. But that argument neglects two essential points. First, as noted in Google's Motion, "state law . . . cannot confer injury in the Art. III sense where none would otherwise exist." *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435 (S.D.N.Y. 2015) (internal quotation marks and citation omitted), *aff'd*, 680 F. App'x 41 (2d Cir. 2017). Moreover, even if the Illinois legislature had the power to override Article III, it did not try to do that here. It limited BIPA's cause of action to "aggrieved" persons, or persons who suffered some actual harm. And that was a perfectly logical choice because BIPA was enacted, in part, to *facilitate* the use of biometric data in Illinois. *See* Google LLC's Mem. of Law in Support of its Mot. for Summary J. ("Mot.") at 14-15.

*Patel* also suggested that it was relevant that "biometric identifiers . . . cannot be changed if compromised." 290 F. Supp. 3d at 954. But the standing analysis in *Gubala* did not turn on whether it is possible—or how easy it is—to change a Social Security number, address, or credit card number. The point was simply that the "possession" of "personal information" is not itself a concrete harm. 846 F.3d at 912. For purposes of Article III standing, there is no inherent distinction between biometric information and other types of personal information. The fact that certain biological characteristics may be fixed only goes, at most, to the extent of the injury *if* some injury were to occur. And "the hypothetical magnitude of a highly speculative and abstract injury that is not certainly impending does not make the injury any less speculative and abstract." *Vigil v. Take-Two Interactive Software, Inc.* ("*Take-Two*"), 235 F. Supp. 3d 499, 512 (S.D.N.Y. 2017). Moreover, ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████ *See* Google's SOF ¶¶ 53-54.[4] Thus, if anything, the information at issue

here is far less likely to cause harm than the information at issue in *Gubala*, which included the

plaintiff's name, "date of birth, home address, home and work telephone numbers, social security

number, and credit card information." 846 F.3d at 910.

Other than *Patel*, plaintiffs cite no case supporting their untenable theory of standing.[5]

Instead, they try but fail to distinguish the many on-point precedents in Google's Motion. They

argue that the decisions in *Take-Two* and *McCollough v. Smarte-Carte, Inc.*, No. 16 C 03777,

2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) are distinguishable because the plaintiffs in those

cases voluntarily submitted to the defendants' alleged conduct. *See* Opp. at 13-14. But the facts

of *Take-Two* and *McCollough* only reinforce the lack of standing here: Like the plaintiffs in

those cases, ██████████████████████████████████████████████

████████████████████████████████ *See infra* §§ II.A.3-4. Weiss claims he

████████████████████████████████████████████

█████████████████████. *See* Responses to Google's SOF ¶ 30. He nonetheless

████████████████████████████████████

---

[4] Plaintiffs try to claim a factual dispute on this issue, but none exists. *See* Responses to Google's SOF ¶¶ 53-54. With respect to Weiss, plaintiffs cite the Declaration of Allen Porter for the proposition that the ████████████████████████████████████ *Id.* ¶ 53. In fact, the declaration says only that ███████████████████████████████████ With respect to Rivera, plaintiffs cite the deposition testimony of Teresa Ko regarding ██████████████████████████████████ *See id.* ¶ 54. But it was ████████████████████████████████████ The Court should therefore deem this point admitted. *See* L.R. 56.1(b)(3)(C); *see also Banks*, 2012 WL 6184880, at *4 (deeming facts that were improperly controverted admitted); *Coldwate*, 2012 WL 5077718, at *1 n.1 (denials that are "unresponsive to the facts asserted . . . are ineffectual and deemed to be admissions").

[5] Plaintiffs submitted a notice of supplemental authority drawing the Court's attention to *Dixon v. Washington & Jane Smith Cmty.*, No. 17 C 8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018). But that case was about harm flowing from unauthorized *disclosure* of biometric data, which is not at issue here. *See id.* at *10.



*See* Google's SOF ¶¶ 26-27. ███████████

███████████ *See id.* ¶ 25. Based on those facts, Weiss cannot colorably claim that ███████████

███████████

███████████

███████████

███████████

Similarly, ███████████

███████████

███████████ *See* Google's SOF ¶ 40.

Rivera then ███████████

███████████

███████████ *See id.* ¶ 38. Against this backdrop, there is little difference between the plaintiffs in this case and the plaintiffs in *Take-Two* and *McCollough*.

More broadly, plaintiffs fail to grapple with the deeper reasoning of those decisions. In *McCollough*, the court indicated that there could be no injury from the mere retention of biometric data "if there [was] no allegation that the information was disclosed or at risk of disclosure." 2016 WL 4077108, at *3. There is no such allegation in this case. And the basic rationale of the *Take-Two* decision was that the Illinois legislature did *not* deem "the collection and storage of biometrics" to be "in-of-itself undesirable or impermissible." 235 F. Supp. 3d at 504. Rather, the object of BIPA is to "ensure" that a company does not use that biometric data "for an improper purpose." *Id.* Here, there is no evidence that Google used plaintiffs' data in an

improper way, and certainly not in any way that inflicted concrete harm. To the contrary, █

████████████████████████████████████████████████████████████████

█████████████████████████ *See* Google's SOF ¶ 59.[6]

### 3. Plaintiffs' Alleged Harms Do Not Resemble Common Law Torts.

In performing the standing analysis, "it is instructive to consider when an alleged

intangible harm has a close relationship to a harm that has traditionally been regarded as

providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. Many

post-*Spokeo* cases *have* found that violations of statutes dealing with privacy gave rise to injuries

analogous to common law privacy torts, and so were cognizable under Article III. *See*, *e.g.*, *Van

Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (statutory violation led

to "unsolicited contact" and "disturb[ing of] solitude," similar to nuisance tort); *Robins v.

Spokeo, Inc.*, 867 F.3d 1108, 1114 (9th Cir. 2017) (statutory violation resulted in "dissemination

of false information," similar to defamation tort). This case is different because, as Google

explained in its Motion, there is no "close relationship" between the harm alleged by plaintiffs

here and any of the traditional privacy torts.

Plaintiffs' response fails at every turn. Plaintiffs claim that their alleged harms are "part

of the same historical legal landscape" as the tort of appropriation of name or likeness. Opp. at

10. They are not. The interest protected by that tort "is the interest of the individual in the

---

[6] Plaintiffs claim that there is a factual dispute regarding the use of their data but they cite nothing to support that claim. *See* Responses to Google's SOF ¶ 59. Instead, plaintiffs cite two documents that █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*See id*. Plaintiffs offer no evidence that either document ████████████████████

████████████████████████████████████████ More importantly, neither document suggests that ████████████████████ The Court should therefore deem this point admitted. *See* L.R. 56.1(b)(3)(C); *see also Banks*, 2012 WL 6184880, at *4; *Coldwate*, 2012 WL 5077718, at *1 n.1.

exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts § 652C cmt. a (1977). Google has not used the "identity" of either plaintiff, "represented by" a "name" or "likeness," to "advertise [its] business," promote its products, or for any other comparable purpose. *See id.* § 652C cmt. b; *see also* Google's SOF ¶ 59. Plaintiffs concede as much by failing to allege that Google violated the provision of BIPA that prohibits "sell[ing], leas[ing], trad[ing], or otherwise profit[ing]" from a person's biometric data. 740 ILCS 14/15(c). Nor has Google deprived plaintiffs of some beneficial use of their purported biometric data, or somehow diminished its value.[7] At most, the evidence shows that Google ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ That is simply not a "misappropriation" of plaintiffs' "likenesses."

As for intrusion upon seclusion, that tort imposes liability on one who "intentionally intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Private face grouping is a far cry from that tort. *See* Mot. at 16-18. Plaintiffs do not dispute that, as a legal matter, the appearance of a face is public. *See* Restatement (Second) of Torts § 652B cmt. c; *United States v. Dionisio*, 410 U.S. 1, 14 (1973). Plaintiffs also do not dispute that their photographs (again, photographs that they uploaded or allowed others to upload) were organized solely in private accounts. It follows that plaintiffs never experienced any sort of "intru[sion] into a private place." Restatement (Second) of Torts § 652B cmt. c.

---

[7] Plaintiffs try to buttress this theory by claiming to have a right "in the nature of a property right" in their biometric data. Opp. at 10 (internal quotation marks omitted). Here, as in *Gubala*, that argument is "gibberish." 846 F.3d at 913. Even if plaintiffs' data has "economic value," Google has done nothing to diminish it. *Id.*

Plaintiffs counter that the Illinois legislature has deemed the collection of biometric information "offensive." Opp. at 10. First of all, that is not true. The legislature did *not* find that collection of biometrics is "in-of-itself undesirable." *Take-Two*, 235 F. Supp. 3d at 504. Moreover, that argument is beside the point. "Offensiveness" is relevant only if plaintiffs experienced an intrusion into private matters in the first place. They did not.

Finally, plaintiffs seek support in the general "history of privacy." Opp. at 9. In particular, they rely heavily on Samuel Warren's and Louis Brandeis' 1890 law review article, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1990). But that article only confirms how far afield plaintiffs' alleged harms are from traditional privacy torts: The article focused on the *publication* of private information, and it conceived of the relevant privacy harm specifically in terms of private things being "given to the public." *Id*. at 199; *see also id.* at 214-18. Again, there is no evidence that any data about plaintiffs was "given to the public," nor that any such data may be disclosed in the future. *See* Responses to Google's SOF ¶¶ 50-52, 55 (no dispute that plaintiffs' data has not been accessed or disclosed without authorization). And nothing in the article suggests that ███████████████████████████████████████████████████████████
███████████████████████████████████████

### 4.   Plaintiffs' Injuries Were Not Caused by Google's Alleged Conduct.

Because the evidence shows that plaintiffs would not have acted differently if Google had provided some additional notice or disclosure, plaintiffs also cannot show that their purported injuries were caused by Google's alleged violations of BIPA. It is undisputed that Weiss ███████████████████████████████████████████████████████████████
███████████████████████████████████ *See* Responses to Google's SOF ¶¶ 24-27, 30. Weiss also testified that he ██████████████████████████████████████████████████████████████

-12-

█████████████████████████████████████ *See* Google's SOF ¶ 29.[8] Similarly, as explained

above, Rivera continued to █████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████ *See* Google's SOF

¶¶ 37-41.

Plaintiffs claim that they did not take steps to prevent additional photographs from being

uploaded after learning how Google Photos works because their "face[s] had already been

scanned and mapped many times before [they] learned what Google was doing." Opp. at 16.

That argument fails. First, plaintiffs' own theory of injury is that their privacy is violated every

time Google allegedly collects their biometric information. Thus, their reasoning goes, plaintiffs

suffered the same injury each time Google analyzed a new photograph. But that did not stop

plaintiffs from allowing photograph after photograph to be analyzed, long after plaintiffs fully

understood how Google Photos worked, long after plaintiffs retained counsel, and long after

plaintiffs filed their complaints. Second, plaintiffs could have easily taken steps to eliminate or

mitigate their supposed harm. █████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

---

[8] Plaintiffs try to manufacture a dispute on this score. *See* Responses to Google's SOF ¶ 29. But at his deposition, Weiss was asked directly whether he would have ███████████████████████████████

██████ Fahringer Decl., Ex. A (excerpts of the transcript of the deposition of Joseph Weiss) at 178:10-20. That testimony occurred after and clarified the testimony cited by plaintiffs in their response.

**B.**   **Plaintiffs Are Not "Aggrieved" Within the Meaning of BIPA.**

   **1.**   ***Rosenbach* Is Binding on This Court and Plaintiffs Offer No Sound Reason to Depart From It.**

An Illinois Appellate Court has already interpreted the meaning of the term "aggrieved" in BIPA in a case analogous to this one. That court held that to be "aggrieved" and thus able to invoke BIPA's private cause of action, a plaintiff must demonstrate "actual injury, adverse effect, or harm" as a result of the alleged statutory violation. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 20. That holding is controlling and forecloses plaintiffs' claims.

Plaintiffs try to brush *Rosenbach* aside in two ways, neither of which succeeds. First, they suggest that it is entitled to no weight, asking this Court to make its own "'predictive judgment as to how the supreme court of the state would decide the matter [at issue in *Rosenbach*] if it were presented presently to that tribunal.'" Opp. at 18 (citing *Allstate*, 285 F.3d at 635). That misstates the governing standard. Under the *Erie* doctrine, this Court must give "great weight" to *Rosenbach* because it reflects the judgment of the highest Illinois court yet to rule on the relevant question of state law. And this Court may "deviate" from *Rosenbach* "*only* when there are persuasive indications that the highest court of the state would decide the case differently." *Allstate*, 285 F.3d at 637 (emphasis added).[9]

Plaintiffs next attempt to get around *Rosenbach* by claiming that the Illinois Supreme Court will depart from the decision. *See* Opp. at 18. But plaintiffs provide just one reason for that assertion: The fact that *Rosenbach* did not cite *American Surety Co. v. Jones* ("*Jones*"), 51 N.E.2d 122 (Ill. 1943)—a single, inapposite, 75-year-old case. *See* Mot. at 18-19. Plaintiffs'

---

[9] The Illinois Supreme Court's recent decision granting leave to appeal the *Rosenbach* decision has no bearing on the analysis here. *See Rosenbach v. Six Flags Entm't Corp.*, 2018 WL 2452249, at *1 (Ill. Sup. Ct. May 30, 2018). A decision by the Illinois high court on a petition for leave to appeal is not a decision on the merits. *See People v. Ortiz*, 196 Ill. 2d 236, 257 (2001); Ill. Sup. Ct. R. 315. *Rosenbach* is good law and it is still entitled to deference.

reliance on *Jones* is misplaced. The question in *Jones* was whether insurance companies seeking

to challenge the decision of an Illinois regulator to renew a business certificate for their

*competitor* had been "aggrieved" under the relevant statute and therefore had standing to sue.

The Illinois Supreme Court held that the answer was "no"; the plaintiffs lacked any personal

rights in the non-renewal of a third party's license, so their connection to the alleged statutory

violation was too "remote" to make them "aggrieved." *Jones*, 51 N.E.2d at 125-26. But neither

this case nor *Rosenbach* is a case about third-party standing, like *Jones* was. *See* Opp. at 18

(appearing to recognize that *Jones* was a case about standing for "third parties"). *Jones* merely

held that third parties to whom a statute does not grant "legal right[s]" are not aggrieved and thus

do not have a cause of action; *Jones* did not purport to establish that any plaintiff whose "legal

right[s]" are invaded, even without actual harm, has been aggrieved. In other words, *Jones*

identified something that was *necessary* to be aggrieved under a specific Illinois statute. But it

did not purport to define what was *sufficient* to be aggrieved under every Illinois statute. It is

*Rosenbach* which answers the latter question as to BIPA, by explaining that a plaintiff must

demonstrate some actual harm caused by the deprivation of his legal rights to be "aggrieved."

*Rosenbach*, 2017 IL App (2d) 170317, ¶ 20.

### 2. Numerous Cases and Statutes Confirm That "Aggrieved" Requires Actual Harm.

Plaintiffs also fail to contend with the wealth of materials cited in Google's opening brief

which show that *Rosenbach* was rightly decided—that its reading of "aggrieved" aligns with the

text, structure, and history of BIPA, and with numerous Illinois and federal cases. *See* Mot. at

21-26.

But most damaging for plaintiffs is the utter lack of support for their preferred

construction of "aggrieved" in any body of case law. Plaintiffs have a section of their brief

entitled, "Plaintiffs Are Aggrieved as a Matter of Precedent," Opp. at 17, but the sole Illinois precedent they cite is *American Surety v. Jones*—which, as discussed above, is inapposite.

Plaintiffs' only other case is *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD, 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018), *see* Opp. at 17, 19, but that decision too is of limited guidance. As Google explained in its Motion, *Facebook* dealt with class certification questions rather than with a motion for summary judgment; it failed to analyze *Rosenbach* under the proper *Erie* standard; and it misconstrued *Rosenbach*'s key holding by inferring that *Rosenbach* "would find that injury to a privacy right is enough to make a person 'aggrieved' under BIPA" even though that is the very proposition the Illinois Appellate Court *rejected* in the case. Mot. at 25-26; *In re Facebook Biometric Info. Privacy Litig.*, 2018 WL 1794295, at \*6. Further, *Facebook* vastly over-reads *Jones* in the same way plaintiffs do here—the *Facebook* court plucked language from *Jones* about why certain third parties lacked a cause of action, and construed it as a test for when a party is "aggrieved" under Illinois law for all purposes. *See In re Facebook Biometric Privacy Litig.*, 2018 WL 1794295, at \*7. That stretches *Jones* beyond what it held, and beyond how Illinois courts have applied it—i.e., to distinguish between third-party and first-party grievances. *See In re Harmon's Estate*, 295 N.E.2d 66, 68 (Ill. App. 1973); *North Federal Sav. & Loan Ass'n of Chicago v. Becker*, 182 N.E.2d 155, 157 (Ill. 1962).

Against this paltry showing of supportive "precedent" are the numerous Illinois and federal cases that have addressed the meaning of "aggrieved" in various statutes, and repeatedly declined to construe the term as plaintiffs ask here. Instead, those cases repeatedly insist on an injury or adverse effect. *See* Mot. at 24-25; *see also Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1304 (2017) (municipality was "aggrieved" under the Fair Housing Act because it suffered "financial injuries"); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 110

(1979) (village was "aggrieved" because it experienced "adverse consequences" such as fewer "buyers in [its] housing market"); *New Hampshire v. Holder*, 293 F.R.D. 1, 7 (D.C. Cir. 2013) (party was not "aggrieved" under Voting Rights Act because he failed to establish "any injury" such as a "negative impact on his ability to vote"); *Richards v. NLRB*, 702 F.3d 1010, 1014 (7th Cir. 2012) (parties were not "aggrieved" under the NLRA because they "simply suffered no injuries"); *Panhandle Eastern Pipe Line Co. v. FERC*, 198 F.3d 266, 269 (D.C. Cir. 1999) (company was not "aggrieved" under Natural Gas Act because it experienced "no harm").

Plaintiffs fall back on the idea that giving the word "aggrieved" its natural meaning in this context would "nullify" BIPA's private right of action and "emasculate" the statute. Opp. at 1-2. That is untrue. For one thing, it is hardly unprecedented to require plaintiffs to demonstrate some actual harm before seeking relief, especially in the privacy context. *See, e.g.*, *Sterk*, 672 F.3d at 539 (plaintiff could not seek relief under the Video Privacy Protection Act where the harm arising from the alleged violation was "enormously attenuated"); *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1181-82 (Ill. App. Ct. 2014) (plaintiff could not state a claim for intrusion upon seclusion because the alleged intrusion did not reveal anything "especially private" and was not "highly offensive"). For another, to agree with Google is not to hold that the collection, disclosure, or profiting from one's biometric identifier could never inflict an actual harm sufficient to make a plaintiff "aggrieved." "Aggrieve[ment]" is not an insurmountable bar, but it does require a plaintiff to point to at least some real-world harm beyond the mere fact of an alleged statutory violation to unlock BIPA's severe penalties. *See* Order at 2 n.1 (Dkt. 76) ("There is room to debate whether a mandatory-minimum damages scheme is appropriate for violations—any violation, on a per violation basis, without regard to extent of actual injury—of a statute that deals with rapidly advancing technology.").

### 3. Plaintiffs' Reading Of "Aggrieved" Would Produce Absurd Results.

Finally, if plaintiffs' suggested reading of "aggrieved" were adopted, then "absurd consequences would follow." *Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 176-177 (2011). Individuals who experience no *actual* adverse effect from an entity's alleged collection of their biometric information could nonetheless band together, demand enormous statutory damages, and pressure the entity to pay a large settlement. That result would be unfair and inconsistent with the traditional role of courts, and there is no reason to think that the Illinois legislature intended it. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, *actual harm*.") (emphasis added). That is confirmed by the fact that the Illinois legislature used a "restrictive" term like "aggrieved" to define the class of individuals entitled to sue under BIPA, rather than an "expansive" term like "any person." *Bennett v. Spear*, 520 U.S. 154, 165 (1997). Plaintiffs' reading would also deter the use of new biometric technologies in Illinois and elsewhere—the opposite of what the legislature intended. There is no reason to construe BIPA to "produce" these unfair and "absurd results" when the natural reading of the statute would avoid them. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

### C. Plaintiffs Are Not Entitled to Damages or Injunctive Relief Under BIPA.

Finally, plaintiffs are not entitled to any remedy under BIPA because they have suffered no actual harm. BIPA ties its allowance of liquidated damages to the presence of actual damages. It says that a prevailing party can recover "liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20(1). Thus, liquidated damages are available only *after* the plaintiff's actual damages are taken into account and calculated. If the actual damages exceed $1,000, the plaintiff will recover that sum; if they fall short, the plaintiff is ensured a base recovery. If a plaintiff suffers no injury whatsoever—not even "*some* harm for which damages

can be reasonably assessed"—there is no justification for a liquidated award. *Doe v. Chao*, 540

U.S. 614, 620-621 (2004) (emphasis added). "[P]roof of nothing more than a statutory violation"

does not suffice. *Id.* at 620.

The Supreme Court's decision in *Doe v. Chao* reinforces this reading, as do the numerous

cases that have applied *Doe* to different statutory schemes and similarly held that liquidated

damages were only available to parties that experienced "something more" than a mere statutory

breach. *Id.* at 622; *see* Mot. at 28 (citing cases). Plaintiffs try to distinguish *Doe* and its progeny

by pointing out that BIPA uses different statutory language. Opp. at 21. But, as explained above,

the most natural reading of BIPA's language is that it requires some harm. At the very least that

is a plausible reading, and the Court should interpret the statute in accord with the "traditional

understanding that tort recovery requires not only a wrongful act plus causation reaching to the

plaintiff, *but proof of some harm for which damages can reasonably be assessed*." *Doe*, 540 U.S.

at 620-21 (emphasis added). After all, "[c]ourts have no power to presume and remediate harm

that has not been established." *Lewis*, 518 U.S. at 360 n.7.

Likewise, BIPA's allowance of injunctive relief to a "prevailing party" incorporates the

usual requirement of equity—irreparable harm. 740 ILCS 14/20(4). Irreparable harm, in turn,

means an actual or "concrete" injury that cannot be remediated once suffered. *See Pro's Sports

Bar & Grills, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-873 (7th Cir. 2009). The only

"harm" to which plaintiffs' point is an alleged statutory violation and their subjective feelings of

indignation, *see* Opp. at 22-23, but that is neither a concrete injury nor an irreparable one. *See

Gubala*, 846 F.3d at 911.

Basic considerations of equity also compel the rejection of plaintiffs' requested remedies.

Plaintiffs seek astronomical statutory damages, despite the fact that Google's actions did not

negatively impact them in any real-life way. They also seek to wrest control of Google's technology through a permanent injunction, despite the fact that they suffered no harm from that technology. These brazen attempts to obtain remedies for non-existent injuries are "in tension with more than the text [of BIPA]," they are "at odds with the traditional understanding [of] tort recovery" and principles of equity. *Doe*, 540 U.S. at 621; *see eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiffs' requests for relief should be denied.

## III.  CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to Google.

DATED:  June 18, 2018

Respectfully Submitted,

By:  /s/ Susan D. Fahringer
Susan D. Fahringer

**PERKINS COIE LLP**
Susan D. Fahringer, *admitted pro hac vice*
SFahringer@perkinscoie.com
Ryan Spear, *admitted pro hac vice*
RSpear@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Debra R. Bernard (ARDC No. 6191217)
DBernard@perkinscoie.com
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400

Sunita Bali, *admitted pro hac vice*
SBali@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

**HOGAN LOVELLS US LLP**
Neal Kumar Katyal, *admitted pro hac vice*
neal.katyal@hoganlovells.com
555 Thirteenth St., N.W.
Washington, DC 20004
Telephone: 202.637.5528
Facsimile: 202.637.5910

Thomas P. Schmidt, *admitted pro hac vice*
thomas.schmidt@hoganlovells.com
875 Third Avenue
New York, NY 10022
Telephone: 212.918.3000
Facsimile: 212.918.3100

Sara A. Solow, *admitted pro hac vicee*
sara.solow@hoganlovells.com
1735 Market St., Floor 23
Philadelphia, PA 19103
Telephone: 267.675.4600
Facsimile: 267.675.4601

Attorneys for Google LLC