**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDABETH RIVERA and JOSEPH WEISS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | No. 1:16-CV-02714<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

This case arises out of Google's collection and retention of biometric facial information. In 2018, this Court granted summary judgment in favor of Google, holding that the Plaintiffs lacked Article III standing. The Plaintiffs appealed to the Seventh Circuit. But as case law developed on standing for claims under the Illinois Biometric Information Privacy Act, all agreed that a remand was appropriate. After the case was remanded, the Plaintiffs moved to stay this federal lawsuit in favor of a parallel case filed in Illinois state court. For the reasons explained in this Opinion, their motion is granted.

## I. Background

Invoking the Illinois Biometric Information Privacy Act (now commonly referred to as BIPA), Lindabeth Rivera and Joseph Weiss sued Google for collecting and

retaining their face templates through Google Photos. R. 63, Sec. Am. Compl.[1][2] They have sued, on behalf of a proposed class, under Sections 15(a) and 15(b) of BIPA. *Id.*; 740 ILCS 14/15 §§ (a)–(b). Section 15(a) sets forth requirements on establishing and publishing a retention schedule for biometric information:

> (a) A private entity in possession of … biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying … biometric information when the initial purpose for collecting or obtaining such … information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. …

740 ILCS 14/15(a). Section 15(b) covers a different topic, requiring informed consent for the up-front collection of biometric information:

> (b) No private entity may collect, capture, … or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> > (1) informs the subject … in writing that … biometric information is being collected or stored;
> >
> > (2) informs the subject … in writing of the specific purpose and length of term for which … biometric information is being collected, stored, and used; and
> >
> > (3) receives a written release executed by the subject of the … biometric information ….

740 ILCS 14/15(b).

After the lawsuit's filing, and after a denial of Google's dismissal motion, R. 60, the parties engaged in discovery. Following the close of discovery, the Court granted

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2] This Court has statutory jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d). The proposed class consists of over 100 members; the parties are minimally diverse (the Plaintiffs are citizens of Illinois, and Google is a citizen of Delaware and California); and the amount in controversy exceeds $5,000,000. *See* Sec. Am. Compl. ¶¶ 7–10.

summary judgment for Google on the basis that the Plaintiffs lacked Article III standing, because they had not suffered a sufficiently concrete harm to satisfy the injury-in-fact requirement. R. 207 at 27. The Plaintiffs appealed to the Seventh Circuit. R. 213. Meanwhile, given the dismissal of the federal case on Article III grounds, the Plaintiffs filed a virtually identical complaint in Illinois state court. R. 238-1, Pls.' Mot. Stay, Exh. A, *Rivera* State Court Compl. At that time, the Cook County Circuit Court stayed the case pending resolution of the parallel federal proceedings. R. 238-2, Pls.' Mot. Stay, Exh. B, *Rivera* State Court Stay Order. In the same state court, the Plaintiffs' counsel filed another substantially similar case against Google on behalf of different plaintiffs. R. 238-3, Pls.' Mot. Stay, Exh. C, *Azzano* State Court Compl. This case, also handled by the same state trial judge, has been stayed too. R. 238-4, Pls.' Mot. Stay, Exh. D, *Azzano* State Court Stay Order. The Plaintiffs filed yet another similar case on behalf of other plaintiffs in the Northern District of California. R. 242-1, Spear Decl., Exh. B, *Molander* Compl. That case has also been stayed. R. 242-1, Spear Decl., Exh. E, *Molander* Stay Order.

While the Plaintiffs' appeal was pending, the Seventh Circuit issued two decisions addressing Article III standing under BIPA. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020). *Bryant* held that plaintiffs suing under Section 15(b) (the informed-consent provision) generally do meet the requirements for Article III standing, because the deprivation of the right to make informed choices about inherently sensitive biometric information is a concrete harm (akin to a privacy invasion). 958 F.3d at

3

626. On the retention-policy provision (Section 15(a) of the Act), the opinion narrowly held that the injury-in-fact requirement is not met if a person merely complains that the information collector failed to publicly disclose the policy. *Id.* But then *Fox* directly confronted a case in which the plaintiff alleged, under Section 15(a), that the defendant failed not only to publicly disclose a retention policy, but failed to develop one and to comply with the statutorily required destruction schedule. 980 F.3d at 1154. Those additional failures—failure to develop and failure to comply with a schedule—did indeed satisfy Article III's concrete-harm requirement. *Id.* at 1155–56.

In the meantime, the Plaintiffs' appeal was placed in the Seventh Circuit's mediation program. R. 238, Pl.'s Mot. Stay at 3. The mediation efforts proved unsuccessful. But before the filing of opening briefs, Google moved this Court for an indicative ruling in light of the Seventh Circuit's holdings in *Bryant* and *Fox*. R. 232. In December 2020, this Court granted Google's motion, holding that "if the Seventh Circuit were to remand this case, then this Court would vacate the judgment that the Plaintiffs lack Article III standing to pursue the claims under Section 15(b)," but the "judgment would remain intact that the Plaintiffs lack Article III standing under Section 15(a)." R. 235. With the indicative ruling in place, the Seventh Circuit remanded the case to this Court. 7th Cir. No. 19-1182, Dkt. 30. The Plaintiffs concede that this Court still lacks Article III jurisdiction over the Section 15(a) claims concerning the retention policy. *See* Pls.' Mot. Stay at 1, 6; R. 234 at 1. In January 2021, the Plaintiffs moved to stay this federal action in favor of the parallel state court lawsuit, which,

4

as of June 21, 2021, commenced again after the trial judge lifted the stay there. R. 254.

## II. Analysis

Generally speaking, federal courts have an "unflagging obligation" to exercise jurisdiction over cases in which subject matter jurisdiction applies. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). But a "federal court may stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" *Clark v. Lacy,* 376 F.3d 682, 685 (7th Cir. 2004) (quoting *Colorado River,* 424 U.S. at 818). The threshold issue is whether the federal and state suits are truly parallel, and then the federal court engages in a balancing of factors: "To determine whether a stay is appropriate in a particular case, a court must conduct a two-part analysis. First, the court must consider whether the concurrent state and federal actions are actually parallel. Then, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances." *Clark,* 376 F.3d at 685 (cleaned up).[3] The 10 considerations are:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction;

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

(9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Id.* Like many balancing tests, "no one factor is necessarily determinative," and the "weight to be given any one factor is determined solely by the circumstances of the particular case—there is no mechanical formula by which to determine when a stay is appropriate." *Id.* at 687 (cleaned up). Tie-breakers go in favor of moving forward in federal court: "because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011).

On the threshold issue, the *Rivera* state court action is virtually identical to its federal counterpart here. Given the parallel lawsuits, the Court moves on to weigh the *Colorado River* factors.

**1. Jurisdiction over property.** This case does not involve a tug-of-war over real estate or a singular piece of tangible property, so this factor does not apply at all.

**2. Inconvenience of federal forum.** Both the federal and state court forums are located in Chicago, so there is no inconvenience either way. Although it is true that the Plaintiffs initially filed in federal court, they are now the ones who ask for a stay in favor of the parallel state court lawsuit. So this otherwise neutral factor weighs only modestly against abstention. *See Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1021–22 (7th Cir. 2014).

**3. Avoiding piecemeal litigation.** For this particular case and for its specific circumstances, this is the key consideration, and it weighs heavily in favor of abstention. On remand from the Seventh Circuit, in light of *Bryant*, this Court only has

6

jurisdiction over the informed-consent claims under Section 15(b) and cannot exercise jurisdiction over the retention-policy claims under Section 15(a). In contrast, the state case can proceed on both the informed-consent claims *and* the retention-policy claims). R. 254 at 2. If this Court continued to litigate the informed-consent claims, and the state court did too, then two courts would be managing the same informed-consent claims between the same parties. That would make no sense and impose burdens on the parties and both courts.

The other possibility is that the state court would litigate only the retention-policy claims and stay the informed-consent claims in favor of litigating those claims here in federal court. But that would result in inefficient piecemeal litigation. What Google did in obtaining the face templates in the first place (the consent piece of the case) is very likely factually connected to what (if anything) Google did in developing and publicizing a retention policy on the front end and what Google did in complying with a retention policy on the back end. It is true that federal discovery concluded, but a merits decision is still needed on the claims, and now this Court can only issue one on the informed-consent claims. As the federal court considers one set of claims and the state court the other, there is a serious risk, given the factual overlap of the claims, of drawing inconsistent factual inferences from the same discovery record.

Worse, the propriety of class certification has not yet been decided, and that too can cause enormous inefficiencies and costs. First, this Court bifurcated discovery so that jurisdictional, merits, and constitutional discovery went first. R. 94. So class-certification discovery had not begun here. Again, given the factual overlap of the

7

claims, both courts would end up issuing discovery schedules and orders that would impact the other court. Of course coordination is always possible, but it is actually more difficult to do that efficiently when the claims are divided yet overlap (as they would be if this Court presided over the informed-consent claims while the state court presided over the retention-policy claims). Moving beyond discovery, simultaneous evaluation of class-certification motions again pose the risk of inconsistent factual findings. Worst of all, if an informed-consent class were certified in federal court and a retention-policy class were certified in state court, then class members (who would almost surely substantially overlap) would receive two sets of notices and engender substantial confusion.

To avoid all this, Google argues (in the alternative) that the Plaintiffs' standing to bring retention-policy claims in state court is not guaranteed. There are few guarantees in law and life, but this is not very persuasive. First, Article III standing—under the *federal* Constitution—is not a jurisdictional bar in Illinois state court. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 685 N.E.2d 1370, 1377 (1997). Second, standing in Illinois state court is more expansive for plaintiffs than federal Article III standing. *Soto v. Great Am. LLC*, 165 N.E.3d 935, 941 (Ill. App. Ct. 2020), *appeal allowed*, 147 N.E.3d 688 (Ill. 2020); *Lee v. Buth-Na-Bodhaige, Inc.,* 143 N.E. 3d 645, 665 (Ill. App. Ct. 2019). Indeed, the Illinois Supreme Court has approved a plaintiff's standing to bring retention-policy claims under BIPA without requiring the plaintiff to "plead [or] prove that they sustained some actual injury or damage beyond infringement of the rights afforded them under the law." *Rosenbach*

8

*v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019). *Rosenbach* reasoned that the Illinois General Assembly enacted privacy protections over biometric information, so any breach of Section 15—without distinguishing any aspect of the retention-policy requirements—is enough to deem the plaintiff as a person "aggrieved" under the statute for purposes of asserting a valid BIPA claim. *Id.* at 1206–07. It is very likely that the Plaintiffs will survive standing challenges in state court on the retention-policy claims. So all the waste identified above will come to pass if both courts keep moving forward.

**4. Order of jurisdiction**. This factor weighs against abstention because the Plaintiffs filed in federal court first. R. 1. Having said that, the Plaintiffs did so when *Bryant* had not yet been decided, so it was still possible, at that time, to litigate both sets of claims in federal court.

**5. Source of governing law**. This factor weighs significantly in favor of abstention because Illinois legislation supplies the substantive governing law. It is true, as Google contends, that there might still be federal-law issues lingering in the case, including the applicability of the Dormant Commerce Clause as a defense against the statute. R. 242, Def.'s Resp. at 11–12. But an Illinois state court's interest in interpreting and applying, in the first instance, an Illinois statute outweighs the federal interest in the mere possibility of an applicable federal defense. Indeed, it is likely that the statutory interpretation of BIPA is necessary as the foundational premise of then applying the Dormant Commerce Clause to it. In any event, state courts are competent to decide questions of federal constitutional law. *See Gilbert v. Illinois*

9

*State Bd. of Educ.,* 591 F.3d 896, 901 (7th Cir. 2010) (explaining that "either the federal or the state courts are competent to adjudicate questions of federal law, including questions of constitutional law."). The Illinois interest in an Illinois state court deciding an Illinois statutory claim weighs in favor of abstention.

**6. Adequacy of state action**. Given the availability of federal-law defenses in state court, there is no reason to doubt that an Illinois state court can adequately protect both parties' interests.

**7. Relative progress**. This factor weighs against abstention given the significant discovery that has taken place in this Court. *See* R. 242-1, Spear Decl. ¶ 3. Even with bifurcated discovery (putting off class-certification discovery as described earlier), the parties exchanged over 150 discovery requests and took five depositions. *Id.* The state court action, on the other hand, "never got off the ground." R. 242-1, Spear Decl., Exh.D, *Molander* Mot. Dismiss at 7. As this Opinion discussed earlier, however, class-certification discovery looms and, indeed, as the Plaintiffs point out, the summary judgment practice was limited to standing and standing-related arguments. *See* R. 243, Pl.'s Repl.at 8. What's more, there is no reason to think that the federally generated discovery will all go to waste. A large part of the federal discovery should be usable in state court, perhaps with targeted supplementation that might be needed to conform with state rules and state practice. So, although this factor weighs modestly against abstention, it is not enough to outweigh splitting the case into two.

**8. Concurrent jurisdiction**. As discussed earlier, the state court has concurrent jurisdiction over both sets of BIPA claims, so this weighs in favor of a stay here to gain the efficiencies of one court presiding over the entirety of the claims.

**9. Availability of removal**. This factor weighs slightly in favor of abstention because Google cannot remove the retention-policy claims in the *Rivera* state court action. *Loughran v. Wells Fargo*, 2 F.4th 640, 650 (7th Cir. 2021) (explaining that the "unavailability of removal *favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute") (emphasis in original). The time to remove the case expired during the pendency of the appeal, 28 U.S.C. § 1446(b)(2)(B), but the that is not the truly important problem with removal. The real problem is that, even if the state case could be removed, the retention-policy claims would go back to state court again due to lack of Article III standing for those claims. In other words, the Plaintiffs did not try to circumvent the removal statute by filing the retention-policy claims in state court—they did so only after this Court dismissed those claims on summary judgment. Those claims cannot be removed to this Court, period, so this factor weighs in favor of deferring to a state action in which both sets of claims can be litigated together.

**10. Vexatiousness**. As just discussed, given this Court's dismissal of the retention-policy claims, the Plaintiff's decision to file the state action in *Rivera* was not vexatious. Indeed, *Bryant* confirmed that a retention policy limited to the failure to publicly disclose a retention schedule does not satisfy the injury-in-fact requirement. 958 F.3d at 626. So it was reasonable for the Plaintiffs to file the *Rivera* state action

11

to preserve the retention-policy claims. Against this, Google contends that the Plaintiffs' *counsel* engaged in forum-shopping by filing the nearly identical *Molander* case in the Northern District of California. Def.'s Resp. at 4. But that argument, for what it is worth, targets *Molander* as a potentially vexatious case, not *Rivera* in Illinois state court. This factor does not weigh in favor of a stay.

### III. Conclusion

The significant costs imposed by piecemeal litigation—dividing the informed-consent claims and the retention-policy claims into two different forums—and the strong Illinois interest in presenting an Illinois statutory dispute to the Illinois state court system dictate that this federal case be stayed in favor of the state case. The Plaintiffs' motion to stay, R. 238, is granted. To track the case only (no appearance is required), a status hearing is set for December 3, 2021, at 8:30 a.m. The parties shall file a concise status report setting forth the general status of the state case by November 22, 2021.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 30, 2021